The State v. McCarty.

No. 21,747.

THE STATE OF KANSAS, *Appellee*, v. J. E. McCARTY et al., *Appellants*.

### SYLLABUS BY THE COURT.

CRIMINAL LAW—*Obstructing and Resisting Sheriff in Execution of Warrant for Felony—Offender in Custody of Constable—Superior Authority of Sheriff*. In a prosecution of the defendants for knowingly and willfully obstructing and resisting, by force and violence, a sheriff in the execution of a warrant for felony, it appeared that the sheriff took the offender into custody inside a building, in the presence of the defendants, took the offender out of the building, and while on the way to the office of the justice of the peace who issued the warrant, the defendants fell upon the sheriff, and held, pulled, and beat him, until the offender escaped. The defendants offered to show that at the time of the arrest inside the building they were guarding the offender, at the call of a constable who was not then present, but who had reduced the offender to custody on a warrant for breach of the peace, and that the defendants apprised the sheriff of the facts. *Held*, the sheriff was clothed with superior authority and was vested with superior right to the custody of the offender; the offered evidence did not tend to show that the force and violence displayed outside the building were not knowingly and willfully exercised; and the offered evidence, if true, afforded no justification for obstructing and resisting the sheriff.

Appeal from Morton district court; GEORGE J. DOWNER, judge. Opinion filed January 11, 1919. Affirmed.

F. S. *Macy*, of Liberal, for the appellants; H. A. *Gaskell*, of Liberal, *Edgar Foster*, of Dodge City, and *Samuel Yaggy*, of Syracuse, of counsel.

S. M. *Brewster*, attorney-general, G. *Porter Craddock*, county attorney, and *John W. Davis*, of Greensburg, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The prosecution was one for felonious obstruction and resistance of a sheriff in the execution of a warrant of arrest. The defendants were convicted, and appeal.

The prosecution grew out of the facts attending the killing of sheriff Moore by Don Van Wormer, set forth in the opinion in the case of *The State v. Van Wormer*, 103 Kan. 309, 173 Pac. 1076. Three of the defendants are the persons who claimed they were deputized by constable Thompson to keep the custody of Van Wormer while the constable went away for a while on such business as he had. In addition to the facts narrated in Van Wormer's case, it should be said that a porch extended along the front of Van Wormer's office, which faced toward the east. The door was near the center of the building. After arresting Van Wormer and taking him out of the door, the sheriff struggled with him along the porch toward the north, and the escape was effected while the sheriff and Van Wormer were on the ground at the north end of the porch. There was ample evidence that Van Wormer succeeded in breaking away from the sheriff because the defendants were at the time obstructing and resisting him, by holding, pulling, and striking him.

The transaction divides naturally into two phases—one inside Van Wormer's office, where he was taken into custody by the sheriff, and one outside the building, where he escaped. The assignments of error which are of substantial merit relate to the action of the court in excluding evidence as to what occurred inside the building, other than the arrest and removal of Van Wormer by the sheriff in the presence of the defendants, and in restricting the defendants to whatever they might offer by way of defense respecting the melee which occurred outside the building.

The statute under which the defendants were prosecuted reads as follows:

. The State v. McCarty.

"If any person or persons shall knowingly and willfully obstruct, resist or oppose any sheriff or other ministerial officer in the service or execution or in the attempt to serve or execute any writ, warrant or process, or in the discharge of any official duty in any case of felony, every person so offending shall upon conviction be punished by confinement and hard labor for a term not exceeding five years, or by imprisonment in the county jail for a term not less than six months, or a fine not less than five hundred dollars." (Gen. Stat. 1915, § 3553.)

It will be noted that this statute does not limit the crime to resistance only, in which the person charged must participate with greater or less display of force. (29 Cyc. 1329.) The prosecution, however, was in fact so limited. The specification in the information of the manner and means whereby the sheriff was obstructed, resisted, and opposed, was that the defendants, armed with deadly weapons, assaulted, struck, beat, and wounded him. The opening statement to the jury by counsel for the state connected the defendants with what occurred at the time of the arrest inside the building no further than that they were present, and saw and heard what took place, and so knew that the sheriff was duly executing a warrant of arrest. The statement continued as follows:

"The sheriff seized Van Wormer, took him into his custody, and took him out of his building, and was proceeding to take him to the office of the justice of the peace. . . . Now after they had gotten out of the door of the Van Wormer real-estate office, these four defendants all followed him out into the street. The sheriff and Don Van Wormer were struggling together—Van Wormer was fighting and resisting the sheriff, and Van Wormer said to these defendants, who stood just a few feet away from them, he said 'Are you'—or 'You are a fine lot of sons of bitches to let this big son of a bitch take me,' or words to that effect. When Don Van Wormer said that, these four men all jumped on to the sheriff, and beat him, tearing his clothes, assaulting him, resisting him, and holding him, and they let Don Van Wormer escape from the sheriff's custody."

The evidence on behalf of the state developed what occurred inside the building no further than the opening statement had indicated, except that in an incidental way some statements and protests of the defendants relating to Van Wormer's being their prisoner and in their charge crept in. The case was submitted to the jury under the following instruction:

"If you find from the evidence beyond a reasonable doubt, that Martin E. Moore, sheriff of Morton county, Kansas, on the evening of July 22, 1916, in manner and form as charged in the information, arrested and was attempting to take, or had taken into his custody, one Don Van

Wormer, and that while the said sheriff was attempting to take Van Wormer to the office of justice Perkins, the defendants, J. E. McCarty, Joe Littell, Walter Littell and Lewis Perkins, interfered by striking, beating or wounding the sheriff, or by holding on to the sheriff or to Van Wormer, so that said Van Wormer was enabled to escape from the custody of the sheriff, they would be guilty of knowingly and willfully obstructing, resisting or opposing the sheriff in the execution of his duty, after having made the arrest, and it will be your duty to return a verdict of guilty."

The correlative instruction was as follows:

"If you find from the evidence that the defendants, J. E. McCarty, Joe Littell, Walter Littell and Lewis Perkins, on the evening of July 22, 1916, did not strike, beat or wound or hold on to the sheriff, or in any wise interfere with him by obstructing, resisting, or opposing the sheriff in the arrest of Don Van Wormer, or while he was attempting to take, or had taken him into his custody, the defendants would not be guilty, and it would be your duty to so find."

While this instruction, considered technically and alone, was somewhat broader than the other, it was plainly intended to be the reverse of the other; and reading the two together, the guilt of the defendants was made to depend solely on actual violence displayed toward the sheriff.

The defendants desired to prove Van Wormer's arrest by the constable, their deputyship under the constable, their lawful custody of Van Wormer by virtue of their deputyship, and their notification to the sheriff, while they were inside the building, of their relation to Van Wormer. The purpose was to show two things: first, that the defendants did not knowingly or willfully obstruct, resist, or oppose the sheriff, and second, that if they did, they were justified.

The evidence bore no relevancy to the gravamen of the charge—acts of violence committed outside the office. The state did not claim resistance to the officer inside the building, and of course the defendants made no such claim. The issue was whether or not after the arrest, after the sheriff in further execution of the warrant had taken the prisoner out of the building, and while the sheriff was proceeding to take the prisoner to the court which issued the warrant, the defendants set upon the sheriff and fought him and beat him. A righteous mental attitude preserved toward the sheriff while he was in the building and until he was leaving the building behind him

in execution of his process, had no tendency to disprove the knowing and willful character of the physical force used.

The evidence was not admissible in justification of the violence displayed toward the sheriff. Conceding that the defendants originally had authority to hold Van Wormer in order that he might be brought to justice, they had no right to stage a forcible and violent rescue after the sheriff had peaceably, so far as they were concerned, reduced the offender to his own custody. The state of Kansas was exercising authority over the person of Van Wormer through its executive officers. Its interests were the paramount interests. Officers charged with identical duty to preserve the public peace, suppress riots and affrays, and bring to punishment violators of the criminal laws, must not cast off that duty and turn raging combatants of each other. To do so is to thwart the purpose of the state in appointing them. In this instance it led to the escape of the prisoner fought over, and to murder.

The defendants, however, were not equal in authority with the sheriff. If the constable had been present when the sheriff appeared, the sheriff would have had the right to supersede him. It is true that a constable exercises powers of the same general character as those of a sheriff, respecting preserving the public peace, apprehending criminals, and the like. (Gen. Stat. 1915, § 11590.) But the sheriff is the state's chief executive and administrative officer in his county. In the exercise of executive and administrative functions, in conserving the public peace, in vindicating the law, and in preserving the rights of the government, he represents the sovereignty of the state, and he has no superior in his county. When a situation arises like that which confronted the community of Rolla on July 22, 1916, it becomes the sheriff's right, and it is his duty, to determine what the public safety and tranquillity demand, and to act accordingly. He must, of course, act according to law; but if, holding a felony warrant, he should deem it necessary to take custody of a disturber, held by a constable under a misdemeanor warrant, it is his duty to do so, and it is the duty of the constable to yield. In such a case, the justification of the constable lies in the rightful exercise of overruling authority by the sheriff.

In this instance, the defendants were only bystanders, called on to guard, during the temporary absence of the constable, a man whom the constable had arrested for breach of the peace. The defendants were not general deputies, clothed with the general powers of the constable, and they held no writ or process of any kind. The authority of the sheriff under his felony warrant was clearly superior to theirs, and they were not justified in opposing him at all, much less with physical force. In the Van Wormer case it was said the evidence left little room for substantial doubt that the purported arrest by the constable, and the placing of Van Wormer in charge of a guard of friends, was a sham and a pretense, the real purpose being to obstruct the sheriff. Granting that in this case the good faith of the scheme would be a matter for the jury, if it were properly before them, it did not constitute legitimate defense.

There is nothing else of importance in the case. The defendants were prosecuted, convicted, and sentenced under the statute quoted. It did not work a mistrial when the court adjourned from Saturday until Tuesday in order to hold a session of court in Grant county on Monday. Certain evidence complained of was properly admitted. While some of the rejected evidence offered by the defendants, other than that which has been considered, might have been admitted, and in some instances more extended cross-examination might have been permitted, the issue on which guilt or innocence depended was very narrow, and the defendants suffered no prejudice to their substantial rights. Prejudice resulting from giving an instruction relating to the competency and credibility of the defendants as witnesses will not be presumed. Requests for instructions relating to the powers and duties of constables were properly refused. The jury were correctly and adequately instructed.

The judgment of the district court is affirmed.

MARSHALL, J. (concurring): I concur in the conclusion reached by the court that the judgment be affirmed; but I dissent from the holding that a sheriff, armed with a warrant issued by a justice of the peace, commanding the sheriff to ar-

rest the person named in the warrant, has a greater right to the custody of that person than has a constable armed with another warrant issued by a justice of the peace for the same person, commanding the constable to arrest that person and take him into custody. Neither officer can legally take the person named in his warrant from the custody of the other. The warrant held by the constable can be executed by either the sheriff or the constable, and the warrant held by the sheriff, if in the form prescribed by law, is directed "to any sheriff or constable of the state of Kansas." In the present action, after the sheriff obtained custody of Don Van Wormer, the defendants had no right to oppose, or interfere with, the sheriff in that custody.

WEST, J., joins in the foregoing concurrence and dissent.

------

## OPINION DENYING A REHEARING.

(Filed March 8, 1919.)

The opinion of the court was delivered by

BURCH, J.: The defendants file a petition for a rehearing on the ground they have been denied the right to be fully heard in this court.

The cause was argued orally by the attorney who signs the petition, and by counsel for the state. The defendants' abstract and brief were on file, but the state's counter-abstract and brief had not been completed. Time was given for this to be done, and the defendants were given leave to reply by further abstract and brief, if necessary. The state's counter-abstract and brief were not filed within the time allowed, and did not reach the attorney until a few days before the opinion affirming the judgment of the district court was filed. The attorney now says he would have submitted further abstract and brief, had he been given an opportunity.

The extent to which the defendants were harmed may be judged by the fact that no additional abstract or brief is tendered. Furthermore, no subject which additional abstract might illuminate is indicated, and no statement or argument contained in the state's brief, to which the attorney desired to

reply, is specified. The fact is, the court's opinion was written before the state's belated counter-abstract and brief were received. The determining questions in the case were clearly delineated and fully argued in the district court. The statements of their positions by counsel for the respective parties, their arguments, and the views of the trial court, were fully presented in the defendants' abstract. The abstract, the defendants' brief, and the oral arguments at the hearing in this court, put the court in full possession of the case. The court was able to reach a decision without further assistance from counsel for the state, and did so. When the state's counter-abstract and brief came in, they required no modification of the opinion already prepared, which treated the case as the defendants had presented it, and it would not advance their interests for them to go to the trouble and expense of replying to anything the state's counter-abstract and brief contained.

The petition for a rehearing charges that the court's opinion was based on an unfounded assumption that the warrant held by the constable was one for breach of the peace only. The defendants are far from clear in their statements about the character of the warrant. They say the warrant was for an occurrence at the back door of Van Wormer's office, where he discharged a shotgun, a deadly weapon, some of the shot striking the defendant Perkins. They do not assert positively that the warrant was not for breach of the peace, but sometimes they call it a felony warrant.

In stating the case to the jury, the attorney signing the petition said the evidence would show that his clients were deputized to guard Van Wormer while the constable went to get a warrant and to arrange for a trial, and while the constable went to make arrangements for the trial, after service of the warrant. In the colloquy between court and counsel over the theory of the case, the court indicated that it understood the warrant was for a misdemeanor, and was not corrected. When the constable was on the witness stand, the attorney offered to prove by him that he was informed that Van Wormer had disturbed the peace by shooting out of the rear door of his office, and some of the shot had wounded Perkins; that Van Wormer surrendered to the constable, and he

The State v. McCarty.

deputized the defendants to guard the prisoner; that he went to the justice of the peace, made complaint, and received the warrant; that he returned and served the warrant on Van Wormer; and that he again left the prisoner in custody of the defendants while he went to the justice of the peace and arranged for the trial on the charge contained in the complaint and warrant. Other offers of proof follow:

"Mr. Macy: The defendants, and each of them, offer to prove by this witness now on the stand that the witness appointed the defendants, J. E. McCarty, Joe Littell, and Walter Littell, as officers to guard and keep the custody of Don Van Wormer, until such time as he could make arrangements for the holding of a session of the court to try the defendant for the crime for which he had just arrested Don Van Wormer."

"Thereupon, Fred Thompson arrested Van Wormer and appointed and deputized Joe Littell, Walter Littell and J. E. McCarty to guard Van Wormer, while he went to the justice of the peace's office and got a warrant for his arrest. That soon after constable Thompson came back to the Van Wormer office with a warrant, and formally arrested Van Wormer under the warrant, and again appointed and required Joe Littell, Walter Littell and J. E. McCarty to remain at the Van Wormer office, and to guard and hold Don Van Wormer while he arranged for a trial on the charge contained in the complaint, filed by Constable Thompson, and also contained in the warrant which had just been served on Don Van Wormer."

"The defendants and each of them now offer to prove by the witness on the stand that when Martin E. Moore entered the Van Wormer office, he said to Don Van Wormer, 'I have a warrant for you, Don,' to which both Walter Littell and Cy McCarty replied to Martin E. Moore, 'Don is already under arrest by officer Thompson, and he has appointed us to guard him until he can arrange a place for trial.'"

One feature of these offers which stands out in bold relief is the contemplated trial of Van Wormer. The constable was informed that Van Wormer had disturbed the peace. The constable went to Van Wormer's office, found him there, and Van Wormer voluntarily surrendered. For some undisclosed reason, the constable did not proceed to take his prisoner before a magistrate. He recognized that under the circumstances he had business with the justice of the peace, but, after mounting a guard over the culprit, he went alone. Finding the justice of the peace, the constable made complaint, and a warrant was issued. The constable then returned to Van Wormer's office, found him in the secure keeping of the deputies, and "arrested"

him. The constable, however, had omitted, for some reason, to arrange with the justice of the peace for the trial. He again requisitioned the services of his guardsmen, and went back alone to arrange for the trial. When the sheriff appeared, the defendants told him they were guarding Van Wormer until the constable could arrange for the trial. The constable did arrange for the trial, and the trial was to be on the charge contained in the complaint made by the constable and stated in the warrant. Now this story is singular enough, but the court hesitates to believe that whoever invented it intended to add a finishing touch of absurdity by having the constable make formal arrangements for a felony trial before a justice of the peace.

In the petition for a rehearing it is said that, if the acts of the defendants from the time the sheriff arrived at Van Wormer's office until he was killed were continuing acts, the rejected evidence should have been admitted. The evidence was offered for just two purposes, stated in the former opinion, and neither purpose was subserved, whether the acts of the defendants were successive—protest inside the building, followed by force displayed outside the building—or were continuing acts, of protest, or force, or both, beginning inside the building and continuing until Van Wormer was set at liberty.

Complaint is made because the original opinion made no mention of an offer to prove a conversation between the constable and the sheriff, occurring after the constable had procured, but before he had served, his warrant, in which the sheriff told the constable he was doing all right, and to go ahead. The evidence, if admitted, would have shown proper noninterference with the constable while he was apparently pursuing—somewhat irregularly, but pursuing—the course of an officer of the law. The evidence had no tendency to exculpate the defendants for what occurred two or three hours later, when the sheriff, holding a felony warrant for the offender, found him still at his office, surrounded by his friends, the constable's warrant still unexecuted, and the constable absent.

It is said the court assumes a state of facts to exist by reference to the Van Wormer case. What state of facts the court assumed, and what effect the assumption had on the decision, the petition forbears to disclose.

It is said the court refers to statements made by Van Wormer, and an argument is made that the defendants were not bound by such statements unless there were a conspiracy, and conspiracy was not charged. A reading of the opinion will disclose that, in showing the prosecution was limited to obstruction and resistance of the sheriff by force and violence, the court quoted from the opening statement to the jury by counsel for the prosecution. In the quotation was a statement attributed to Van Wormer.

The petition for a hearing is denied.