No. 84,355

E. DEAN CARLSON, Secretary of the Kansas Department of Transportation, *Plaintiff,* v. DALE W. FERGUSON and VALLEY FERTILIZER & SEED, L.L.C., *Appellants,* and JAMES B. NICK and ABRAM READY MIX, INC. *Appellees.*

(17 P.3d 333)

Opinion filed January 26, 2001.

*Steve R. Fabert,* of Fisher, Patterson, Sayler & Smith, L.L.P., of Topeka, argued the cause and was on the briefs for appellants.

*Dustin L. DeVaughn,* of McDonald, Tinker, Skaer, Quinn & Herrington, P.A., of Wichita, argued the cause and was on the brief for appellees.

*Thomas G. Lemon,* of Fisher, Cavanaugh, Smith & Lemon, P.A., of Topeka, and *Todd D. Powell,* of the same firm, were on the brief for *amicus curiae* Kansas Fertilizer and Chemical Association.

*Charles S. Arthur, III,* general counsel, and *Edward F. Horne,* assistant general counsel, were on the brief for *amicus curiae* Kansas Farm Bureau.

The opinion of the court was delivered by

Six, J.: This negligence case focuses on jury instructions concerning the statutory rear lighting requirements for fertilizer nurse tanks towed during daylight hours. See K.S.A. 1999 Supp. 8-1427; K.S.A. 8-1701(c); K.S.A. 8-1703; K.S.A. 8-1718. Defendants Dale Ferguson and Valley Fertilizer & Seed, L.L.C. (Valley) appeal a jury verdict finding Valley 100% at fault. The litigation arose from a collision between defendant-cross claimant Abram Ready Mix's (Abram) semitrailer rig and a fertilizer nurse tank towed behind Valley's pickup truck.

Our jurisdiction is under K.S.A. 20-3018(c), based on an order of transfer from the Court of Appeals.

We hold that the instruction on Valley's duty to display lamps (taillights) on the rear of the nurse tank, under the facts here, was clearly erroneous. We set aside the verdict and remand for a new trial. Our reversal on the jury instruction issue moots a secondary question relating to the admission of the personal opinion of the highway trooper who investigated the collision. The trooper, over objection, was permitted to express his opinion as to the type of rear lighting the nurse tank should have had.

## FACTS

On September 9, 1997, Dale Ferguson, a Valley employee, driving a pickup truck towing a blade plow and an anhydrous ammonia tank (a fertilizer nurse tank) collided with a semitrailer rig. Defendant James Nick, an employee of Abram, was behind Ferguson, driving the rig. The arms of the blade plow extended beyond the sides of the pickup. The nurse tank was not equipped with turn signals or taillights.

Nick was driving between 50 and 55 miles per hour. The collision occurred as Nick attempted to pass the nurse tank, plow, and pickup. Ferguson attempted a left-hand turn in front of the semitrailer rig. The rig and property owned by the Kansas Department of Transportation (KDOT) was damaged. The Secretary of KDOT filed suit against both drivers and their employers. Abram filed a cross-claim for its property damage. The parties, stipulating to the

amount of KDOT's damages, agreed that KDOT would not be required to participate in the trial.

The investigating highway patrol trooper was deposed. In his deposition, he was asked whether he was aware of any statute or regulation requiring towed farm implements to have lights or signals. He said he was unaware of any such law. At trial, the trooper testified that in his personal view, "those implements" should be equipped with reflective tape, reflector lights, slow-moving vehicle emblems, and turn signals. Valley's counsel objected on the basis that the answer called for a legal conclusion. The district judge suggested that counsel rephrase the question. The rephrased question and answer follows.

"Q: Trooper, do you have an opinion whether or not there should be warning devices on those implements?

"A: Certainly. My opinion is, this equipment is up and down the highway and should have some kind of marking devices. I think, if I may continue, if you go out to, say, John Deere, for example, right now and you pull out a piece of equipment, an implement, you'll find reflective tape, reflectors and, in most cases, lights."

On cross-examination, the trooper admitted that his testimony was personal opinion, rather than a statement of the law. He confirmed that the accident occurred at 2:30 p.m. on a clear day, when there were few clouds in the sky.

A Valley executive testified that the company's farm implements were inspected by the Kansas Department of Agriculture and that the department did not advise Valley that such implements needed lights.

## DISCUSSION

We first take up Valley's claim of error in instructing the jury. The *amici curiae* briefs support Valley's contentions. At trial, the parties agreed that Valley's plow and nurse tank towed by the pickup were implements of husbandry. An "implement of husbandry" is defined by K.S.A. 1999 Supp. 8-1427 as a

"vehicle designed or adapted and used exclusively for agricultural operations and only incidentally moved or operated upon the highways. Such term shall include, but not be limited to, *a fertilizer spreader or nurse tank* used exclusively for dispensing or spreading water, dust or liquid fertilizers or agricultural chemicals,

as defined in K.S.A. 2-2202, and amendments thereto, regardless of ownership." (Emphasis added.)

K.S.A. 8-1701(c) addresses the scope and effect of the sections in article 17 and says: "The provisions of this article 17 with respect to equipment required on vehicles shall *not* apply to implements of husbandry, road machinery, road rollers or farm tractors *except as specifically made applicable in this act.*" (Emphasis added.)

Valley points out that implements of husbandry are mentioned in K.S.A. 8-1717 and K.S.A. 8-1718. K.S.A. 8-1717 lists the requirements for lights, lamps, and reflectors on farm implements towed behind tractors. K.S.A. 8-1718, a key statute here, lists the requirements for lamps and equipment on implements of husbandry in general:

"(a) Every vehicle, including . . . vehicles referred to in subsection (c) of K.S.A. 8-1701 [implements of husbandry] not specifically required by the provisions of other sections in this article to be equipped with lamps or other lighting devices, *shall be equipped, at all times specified in K.S.A. 8-1703,* with at least one (1) lamp displaying a white light visible from a distance of not less than one thousand (1,000) feet to the front of said vehicle, and also shall be equipped with two (2) lamps displaying red light visible from a distance of not less than one thousand (1,000) feet to the rear of said vehicle, or as an alternative, one (1) lamp displaying a red light visible from a distance of not less than one thousand (1,000) feet to the rear and two (2) red reflectors visible from all distances of six hundred (600) to one hundred (100) feet to the rear when illuminated by the lawful lower beams of head lamps." (Emphasis added.)

K.S.A. 8-1718 references K.S.A. 8-1703. K.S.A. 8-1703 says:

"(a) Every vehicle, except as provided in subsection (b) [dealing with motorcycles, motor driven cycles, and motorized bicycles], upon a highway within this state, *at any time from sunset to sunrise and at any other time, when due to insufficient light or unfavorable atmospheric conditions, persons and vehicles on the highway are not clearly discernible at a distance of 1,000 feet ahead,* shall display lighted head and other lamps and illuminating devices as required for different classes of vehicles, subject to exceptions with respect to parked vehicles. Stop lights, turn signals and other signaling devices shall be lighted as prescribed for the use of such devices." (*Emphasis added.*)

Valley contends that the district court erred by instructing the jury regarding the use of rear lights on the towed nurse tank in Instructions 16 and 18. The two instructions given said:

No. 16

"It is unlawful for any person to drive on any highway any vehicle or combination of vehicles which is not at all times equipped with such lamps and other equipment in proper condition as required by law."

No. 18

"Every towed vehicle, including fertilizer nurse tanks, must have two (2) lamps displaying red light on the rear of the vehicle which is visible from a distance of not less than one thousand (1,000) feet."

At trial Valley objected to both instructions, arguing that they did not apply to implements of husbandry. Valley, in its motion for a new trial, asserted:

"Specifically, Instruction Nos. 16 and 18 incorrectly stated that the defendant's towed nurse tank required rear warning lights and failure to do so was a violation of Kansas law. Kansas law only requires the nurse tank to have tail lights if towed at night, but not during daylight as is the situation here. Moreover, even if defendant had violated Kansas law, the absence of tail lights was not the proximate cause of the accident. These erroneous instructions resulted in the jury assessing 100% of the fault against the defendant."

On appeal, Valley emphasizes that the rear lighting described in Instruction No. 18 is required only during hours of darkness or poor visibility. Thus, Valley concludes that whether the implements contained rear lights is irrelevant to the issue of causation. The "only during hours of darkness or poor visibility" objection was not presented to the district court. Therefore, our standard of review is whether Instruction 18 was clearly erroneous. K.S.A. 60-251(b); see *Bright v. Cargill, Inc.*, 251 Kan. 387, 409, 837 P.2d 348 (1992).

Valley contends that the phrase in K.S.A. 8-1718(a) "shall be equipped, at all times specified in K.S.A. 8-1703" pertains to both the "one (1) lamp displaying a white light" requirement and the "two (2) lamps displaying red light" requirement. Abram counters by reasoning that the phrase "shall be equipped, at all times specified in K.S.A. 8-1703" pertains *only* to displaying a white light. According to Abram, the "two (2) lamps displaying red light" requirement is not immediately preceded by the phrase "at all times specified in K.S.A. 8-1703." Thus, according to Abram, the time of day limitation does not apply to red lights. We disagree.

Both parties acknowledge that under K.S.A. 8-1717, implements of husbandry towed by *tractors* are required to have rear lighting

only from sunset to sunrise and during times of low visibility. Abram asserts that "[f]or some unknown reason," the legislative rear lighting requirements are different for implements of husbandry towed behind tractors and those towed behind other vehicles. Abram's interpretation is unreasonable.

Abram cites no authority for its contention that nurse tanks towed behind vehicles other than tractors require at least two red rear lights displayed at all times. We conclude that the legislature did not intend the distinction between tractors and all other towing vehicles advanced by Abram.

In construing statutes, the legislative intent is to be determined from a general consideration of the entire act. We have said: "To the extent possible, the court should attempt to reconcile different provisions so as to make them consistent, harmonious, and sensible." *Rockers v. Kansas Turnpike Authority*, 268 Kan. 110, 113, 991 P.2d 889 (1999). We presume that the legislature intended that its enactments be given a reasonable construction, so as to avoid unreasonable results. 268 Kan. at 113.

Valley suggests that Abram attempts to apply some form of the "last antecedent" rule to K.S.A. 8-1718. For a discussion of the rule, see *Link, Inc. v. City of Hays*, 266 Kan. 648, 654, 972 P.2d 753 (1999). The rule is not applicable here.

Abram contends that even if implements of husbandry are not required to have red rear lights and turn signals, the district court committed only harmless error by giving Instructions 16 and 18. According to Abram, there was no real possibility that the jury would have returned a different verdict if the erroneous instructions had not been given. Valley counters Abram's harmless error argument by citing *Eckdall v. Negley*, 5 Kan. App. 2d 724, 624 P.2d 473 (1981), and *Peoples Bank of Pratt v. Integral Ins. Co.*, 251 Kan. 809, 840 P.2d 503 (1992). Valley argues that referencing an inapplicable statutory duty in a jury instruction constitutes reversible error. We agree, under the facts here. In *Eckdall*, the jury was instructed that " 'the driver of every vehicle shall drive at an appropriate reduced speed when approaching and crossing an intersection.' " 5 Kan. App. 2d at 725. However, the statute upon which the instruction was based had been amended to read: " '[E]very

person shall drive at a safe and appropriate speed when approaching and crossing an intersection.' " 5 Kan. App. 2d at 726 (quoting K.S.A. 8-1335). Thus, the reduction in speed requirement was eliminated. The *Eckdall* court found that the outdated jury instruction "almost certainly caused the jury to apportion a larger share of causal fault to plaintiff." 5 Kan. App. 2d at 727-28. The instruction was clearly erroneous requiring reversal.

In *Peoples Bank of Pratt*, 251 Kan. 809, 840 P.2d 503 (1992), two trucks, one towing a cattle trailer, collided at an unmarked highway intersection. The district court gave the following jury instruction:

" 'The laws of Kansas provide that on any state or county maintained highway located outside of the city limits a vehicle may pass another vehicle on the left side of the highway when approaching an unmarked intersection when such move can be made with reasonable safety.' " 251 Kan. at 817.

The defendants in *Bank of Pratt* argued that the above instruction implied that some greater duty of care exists where an unmarked intersection is involved when Kansas law imposes no such duty. They acknowledged the exception to K.S.A. 8-1519 (prohibiting a vehicle from being driven on the left side of the roadway when approaching within 100 feet of an intersection does not apply to unmarked intersections outside city limits). However, they concluded that the above jury instruction erroneously implied some greater duty of care where an unmarked intersection is involved. We agreed. The instruction imposed a special duty that was not based on any statute. We reversed and remanded for a new trial. 251 Kan. at 820.

We find no error here in the language of Instruction No. 16 when viewed as a single instruction. However, Instruction No. 18 imposed a duty to have two red rear lights on the towed fertilizer nurse tank. The imposed duty is not based upon any statutory duty. The error in No. 18 tainted No. 16. The clearly erroneous instruction most likely influenced the jury in its determination of the percentage of fault. Abram's argument that any error was harmless fails. We reach a firm conviction that if the error had not occurred, there was a real possibility that the jury would have returned a

different verdict. See *Jackson v. City of Kansas City*, 263 Kan. 143, 148, 947 P.2d 31 (1997).

Valley also objects on appeal to the propriety of other instructions in addition to Nos. 16 and 18. These additional instructions were not objected to below. We note the district court gave Pattern Instructions for Kansas (PIK) Civ. 3d 121.27(a), which addresses the use of turn signals:

"The laws of Kansas provide that any turn signal, when required by law, shall be given by signal lamps."

Valley argues before us the plow blade and nurse tank towed by the pickup truck are implements of husbandry and are, therefore, exempt from any turn signal requirements. Valley correctly observes there is no statute requiring implements of husbandry towed by a pickup truck to be equipped with turn signals. K.S.A. 8-1549 provides that where turn signal lamps are not required, "[t]he driver . . . shall give such notice [to turn] by means of hand and arm signals, as provided in K.S.A. 8-1550." The record reflects that a question of fact existed regarding whether Ferguson gave a hand signal before turning directly in front of Nick. There is a real possibility that the jury would have returned a different verdict had it been instructed on the use of hand and arm signals. We do not know what tactical chemistry will play out at any retrial; however, K.S.A. 8-1549 would appear to deserve consideration.

Our reversal has keyed on Instruction 18. K.S.A. 8-1718 does not require that in the middle of a clear, sunlit afternoon fertilizer nurse tanks be equipped with two "lamps displaying red light . . . visible from a distance of not less than one thousand (1,000) feet" to the rear of the nurse tank.

The lighting questions raised here concerning implements of husbandry have traditionally been of interest to the legislature. Safety issues arising from highway travel and the regulation of farm equipment on public roads and highways are areas the legislature may wish to revisit.

## The Trooper's Testimony

Valley also argues that the district court committed reversible error by admitting the highway patrol trooper's opinion into evi-

dence. Our reversal on the instruction issue negates the need for an analysis of this contention. However, we comment briefly for instructional purposes.

While the trooper gave his personal opinion regarding the placement of warning devices on towed implements, the jury may have believed that the officer's testimony expressed his opinion as to Valley's contributing actions. We have held that testimony of this nature is prohibited. See *Ratterree v. Bartlett*, 238 Kan. 11, Syl. ¶ 1, 707 P.2d 1063 (1985) (finding that officers who investigate accidents may not give opinion testimony concerning the ultimate question of negligence because it would invade the province of the jury); *Kleibrink v. Missouri-Kansas-Texas Railroad Co.*, 224 Kan. 437, 440, 581 P.2d 372 (1978) (stating that the officer could not testify regarding his opinion that the decedent's inattentive driving contributed to his death). On retrial the appropriate inquiry should key on the relevance of the officer's personal opinion.

### Abram's Purported Cross-appeal

Abram argues in a purported cross-appeal that Valley should be precluded from categorizing the plow and nurse tank as "implements of husbandry." Rather, Abram contends that the equipment should be categorized as commercial equipment, causing the plow and nurse tank to fall outside of the statutory exceptions. Abram filed no notice of cross-appeal. Thus, we do not have jurisdiction to consider this argument. See *Douglas v. Lombardino*, 236 Kan. 471, 490, 693 P.2d 1138 (1985). We also observe that Abram effectively admitted that the plow and nurse tank were implements of husbandry at trial. In addition, this issue is presented for the first time on appeal. See *Lindsey v. Miami County National Bank*, 267 Kan. 685, 690, 984 P.2d 719 (1999).

Reversed and remanded.