No. 87,406

MICHAEL E. TYLER, *Appellee*, v. EMPLOYERS MUTUAL CASUALTY COMPANY, *Appellant*, and FARMERS CASUALTY INSURANCE COMPANY, *Appellee*.

(49 P.3d 511)

Opinion filed July 12, 2002.

*Steve R. Fabert,* of Fisher, Patterson, Sayler & Smith, L.L.P., of Topeka, argued the cause and was on the briefs for the appellant.

*Richard F. Hayse,* of Morris, Laing, Evans, Brock & Kennedy, Chtd., of Topeka argued the cause, and *Phillip L. Turner* and *Dan E. Turner,* of Topeka, were with him on the brief for appellee Michael E. Tyler.

*Michael J. Schenk,* of Topeka, argued the cause and was on the brief for appellee Farmers Casualty Insurance Company.

The opinion was delivered by

Six, J.: This is an uninsured motorist (UM) coverage case arising from a UM claim successfully litigated by Michael Tyler against Employers Mutual Casualty Company (EMC). Tyler, a deputy sheriff, was injured on duty in a collision with an uninsured motorist. EMC denied UM coverage. The district court granted summary judgment to Tyler. EMC appeals. Farmers Casualty Insurance Company (Farmers), also a defendant below, adopts many of the arguments advanced by Tyler on appeal.

Our jurisdiction is under K.S.A. 20-3018(c) (transfer on our own motion).

The issues are: (1) Did EMC's policy issued to Jefferson County (County) provide UM coverage for Tyler's collision? (2) If the policy provided UM coverage, how should Tyler's worker's compensation settlement impact the judgment against EMC? and (3) Was

the form of the judgment and the award of interest and attorney fees proper?

We hold that under the facts here, Tyler is entitled to UM coverage and an award of attorney fees and prejudgment interest. However, we reverse on the date prejudgment interest is to commence.

## FACTS

Deputy Sheriff Michael Tyler was injured while operating a Jefferson County Sheriff's department 1994 Crown Victoria patrol car on July 12, 1996. Tyler, in pursuit, collided with an uninsured car driven by Mark Hosler, an uninsured driver. Because of the collision, Tyler suffered bodily injury. Tyler's personal auto insurance was with Farmers. Jefferson County was insured by EMC under a Business Auto Coverage form policy.

Tyler sued Hosler for personal injuries in Shawnee County. EMC moved to intervene in September 1996. Farmers elected not to intervene. EMC, in its motion to intervene, acknowledged that it issued a liability insurance policy covering the patrol car and that the "policy contains an underinsured motorist provision which, under certain conditions, provides insurance coverage for the insureds identified in the policy."

After Tyler submitted his case to the jury, EMC moved for a directed verdict, which was denied. EMC then presented its case and again moved for a directed verdict, which was again denied. The jury found Tyler 10% at fault and Hosler 90% at fault. Tyler was awarded damages totaling $500,000 (reduced for comparative fault to $450,000). All other claims were dismissed without prejudice in anticipation that a separate suit would resolve the insurance-related questions.

Tyler filed a workers compensation claim against Jefferson County. EMC was also the compensation carrier. Tyler was awarded $16,098.25 in disability compensation, $21,847.02 in authorized medical expenses, and $500 in unauthorized medical expenses. In June 2000, the compensation award was amended to show no amount for future medical benefits. In its motion to intervene in the tort action against Hosler, EMC asserted its sub-

rogation lien under K.S.A. 40-284(e)(4) against any payments received from Hosler.

Tyler made demand upon EMC for UM benefits. EMC denied coverage. In its December 22, 1999, letter of denial EMC said: (1) "Tyler would be entitled to UM benefits under EMC's policy only if he could qualify as a permissive user of a vehicle with respect to which the policy provides UM coverage." (2) "EMC's policy provides UM coverage only with respect to vehicles owned by the named insured which are subject to the mandatory insurance provisions of Kansas law. The accident vehicle was a patrol car titled to the Jefferson County Sheriff." (3) "The sheriff of a county is a separate and distinct legal entity from the county, not a subdivision of it." (4) "Even if the accident vehicle had been owned by the County, the policy would not be required to provide UM benefits for persons operating it, because the vehicle was exempt from the [Kansas Automobile Injury Reparations Act] KAIRA and K.S.A. 40-284. . . . Any UM coverage for a government owned vehicle is purely contractual in nature, since no such coverage is mandated by statute." and (5) If "Tyler could qualify for UM benefits under EMC's policy, the amount demanded . . . would clearly exceed any potential liability for benefits of that type."

EMC also asserted that any amount payable as UM benefits would still be subject to dispute because of Tyler's alleged pending appeal of the workers compensation award. According to EMC, the appeal was voluntarily dismissed in November 2000.

### The Contract Action Against EMC

After EMC's refusal to pay UM benefits under its policy, Tyler sued EMC and Farmers in Jefferson County in a contract action to compel payment. He prayed for judgment against EMC and Farmers in the amount of the Shawnee County judgment entered against Hosler.

After discovery, Tyler moved for summary judgment against EMC. He argued that EMC's refusal to pay under the policy was an example of bad faith in light of its earlier admission (when it moved to intervene in Shawnee County) that the patrol car was insured and that there was UM coverage in the policy. Tyler also

claimed that EMC was estopped from asserting that the patrol car was not insured because EMC admitted in the Shawnee County litigation that the patrol car was insured, and EMC also paid for the patrol car's repairs.

## The District Court's Findings

In granting summary judgment against EMC, the district court set out "undisputed controlling facts." We summarize the district court's pertinent findings.

Hosler, an uninsured driver, was driving an uninsured Datsun on July 12, 1996. On the day of the accident, Tyler was assigned to and was driving a patrol car. After the accident, Tyler provided the investigating officers with the insurance card that was given to him by Jefferson County and kept in the patrol car.

Before the accident, Dean Cook, president and owner of Insurance is a Helping Hand, Inc., the policy "producer," had submitted a bid to procure insurance for Jefferson County. The bid was for property and casualty insurance, which included coverage for Jefferson County automobiles ranging from ambulances to sheriff's vehicles. As part of the insurance coverage process, Cook submitted a document titled "Automobile Coverages" which requested a $1,000,000 limit for underinsured motorist (UIM) and UM coverage, with a $500 deductible for physical damage and comprehensive coverage. He requested hired and borrowed auto coverage. Attached to that form was a listing of the vehicles that were to be insured.

EMC provided Cook with a document labeled "Quotation—Business Auto Policy" (quotation) valid from October 23, 1995, through December 7, 1995, including the premiums to be paid and policy coverages; liability coverage limits of $1,000,000 for a premium of $16,340.00; UM coverage limits of $1,000,000 for a premium of $3,987.00; and UIM coverage limits of $1,000,000 for a premium marked as "included." All vehicles to be covered by this quotation were listed.

The patrol car was listed, along with a breakdown of the cost of the insurance premium for this individual vehicle. The listing specified that the liability premium was $288, the UM premium was

$81, UIM coverage was included, and the comprehensive premium was $253, with a collision premium of $206.

Cook received the quotation from EMC in the fall of 1995 and presented it to the Jefferson County Commissioners. The commissioners decided to accept the proposed coverage, paying $32,938, the quotation price for the coverage.

The EMC policy was effective January 1, 1996, through January 1, 1997. Cook received a stack of insurance cards, which he provided to Jefferson County for all of the insured vehicles. EMC also issued and delivered to Cook the Commercial Auto Declarations-Business Auto Coverage form with the schedule of covered autos. The premium and coverages were as listed on the quotation.

EMC paid $3,942.79 for the repairs to the patrol car.

Cook testified that EMC never notified him that the patrol car was not covered by insurance. As far as Cook knew, the patrol car was insured by EMC at the time of the accident. Cook testified that Jefferson County did not provide him with any documents rejecting in writing the UM or UIM coverage for the vehicles being insured by EMC. Linda Hibberts, an employee of Helping Hand, Inc., in the normal course of business prepared and sent a letter to the Jefferson County Sheriff's department listing the vehicles that were insured. This list included the patrol car. In fact, for each and every motor vehicle listed on the EMC policy form with the schedule of covered autos, a charge for UM coverage was included. EMC's insurance contract specifically provided that permissive users were to be considered insureds.

### The District Court's Conclusions

The district court concluded that EMC was contractually liable. Tyler was entitled to $411,554.73, plus accrued interest of $74,633.01 through September 1, 2000, plus $113.07 per day thereafter until paid. Based on this conclusion, the district court deducted the workers compensation award from the $450,000 judgment. Tyler was also awarded $12,568.75 in attorney fees and $946.11 in costs.

EMC later filed a motion for reconsideration and for supplemental findings. The district court amended its previous decision

to "accurately reflect" that its decision against EMC was based upon a finding of contractual liability. The district court specified that it "did not determine liability against [EMC] based upon the legal theory of equitable estoppel."

## DISCUSSION

The pivotal question is whether the EMC policy issued to Jefferson County provided UM coverage for Tyler while he was driving the patrol car.

The patrol car was specifically listed on EMC's policy quotation presented to the county commissioners. Attached to the policy issued by EMC to Jefferson County was a schedule of owned/covered autos. The patrol car was described in the policy as having UM coverage.

Summary judgment is appropriate if there are not genuine issues of material fact and the movant is entitled to judgment as a matter of law. K.S.A. 60-256(c). Summary judgment decisions are reviewed de novo. See *Mark Twain Kansas City Bank v. Kroh Bros. Dev. Co.*, 250 Kan. 754, Syl. ¶ 2, 863 P.2d 355 (1992). EMC's assertion on appeal is that the district court's ruling was incorrect because of an improper interpretation of both insurance policy language and applicable law. EMC does not challenge summary judgment as an improper procedure for disposing of the contract dispute at issue here. The essential facts are documented in the parties' summary judgment submissions and the district court's findings. Our standard of reviewing summary judgment is well established. See, *e.g.*, *Mitzner v. State Dept. of SRS*, 257 Kan. 258, 260-61, 891 P.2d 435 (1995).

### *Policy language*

EMC argues that the policy provided only liability coverage, not UM coverage, for the patrol car.

Under the policy, liability insurance was included for "any auto." UM and UIM coverage was included for autos owned by the County. The policy under "Section I Covered Autos" said:

"6. OWNED 'AUTOS' SUBJECT TO A COMPULSORY UNINSURED MOTORISTS LAW.

Only those 'autos' you own that because of the law in the state where they are licensed or principally garaged are required to have and cannot reject Uninsured Motorists Coverage. This includes those 'autos' you acquire ownership of after the policy begins provided they are subject to the same state uninsured motorists requirement."

The patrol car was titled in the name of "Jefferson County Sheriff Dept." EMC asserts that the patrol car was not owned by the named insured, "Jefferson County, Kansas," and, therefore, did not have UM coverage. The basis for EMC's argument that the County did not own the patrol car arises from the fact that the car title listed the Jefferson County Sheriff's department as the owner. The district court did not make a specific finding that the patrol car involved in the accident was owned by Jefferson County. However, county ownership is implicit in the district court's ruling that the patrol car had UM coverage.

EMC calls on *Lee v. Wyandotte County, Kan.*, 586 F. Supp. 236 (D. Kan. 1984), and *State v. McCarty*, 104 Kan. 301, 179 Pac. 309 (1919), to support its no ownership claim. A review of the facts in *Lee* and *McCarty* shows why neither case is persuasive here. *Lee* involved a 42 U.S.C. § 1981 *et seq.* (1982) civil rights action brought by former jail inmates. The inmates sued the county and county officials, including the county commissioners, for alleged participation in the wrongful shooting of the inmates by a former deputy sheriff. *Lee* noted that under K.S.A. 19-801a, the sheriff was an independent elected official of the county. The commissioners had no authority to supervise discipline or remove the sheriff. The conduct of the sheriff and his subordinates could not be attributed to the county commissioners. 586 F. Supp. at 238-39. *McCarty* was an appeal by defendants convicted of felonious obstruction and resistance of a sheriff in executing a warrant of arrest. The *McCarty* court, in affirming the convictions, said that "the sheriff is the state's chief executive and administrative officer in his county." 104 Kan. at 305.

EMC also asserts that "[o]wnership and legal title are presumed to be one and the same concept in defining the scope of insurance coverage." EMC cites several cases to support this argument; however, we do not find the cases apt precedent under the facts here.

See *Farmers Ins. Co. v. Schiller*, 226 Kan. 155, 156-57, 597 P.2d 238 (1979) (involving a question of ownership when a truck was wrecked before its sale was complete and before a proper title certificate was delivered); *Maryland Cas. Co. v. American Family Insurance Group*, 199 Kan. 373, Syl. ¶ 3, 429 P.2d 931 (1967) (sale of individual's automobile was void because of failure to assign and deliver certificate of title; thus, purported seller remained the owner). EMC does not allege a sale between Jefferson County and the sheriff's department. The County purchased the insurance and paid the premium for UM coverage on the patrol car. We said in *Weaver v. Hartford Fire Ins. Co.*, 168 Kan. 80, 84, 211 P.2d 113 (1949): "A person may actually own an automobile and thus have an insurable interest in it and yet not have legal evidence of title." Here, the County owned and had an insurable interest in the patrol car and insured that interest by contracting with EMC. Again, different facts and different issues distinguish *Farmers Insurance* and *Maryland Casualty* from the case now before us. EMC also cites *Canal Insurance v. Sinclair*, 208 Kan. 753, Syl. ¶ 4, 494 P.2d 1197 (1972) (person named in certificate of title is owner as defined in K.S.A. 8-722 [repealed in 1973]), and *Grimmett v. Burke*, 21 Kan. App. 2d 638, 651, 906 P.2d 156 (1995), *rev. denied* 259 Kan. 927 (1996) (issue of which auto dealership owned vehicle at time of accident was for jury). Neither case supports EMC's position. Here, there was neither a transfer of the patrol car between two parties insured by different insurance companies nor any transfer at all.

We next address EMC's K.S.A. 28-107b separate ownership contention. EMC argues that K.S.A. 28-107b contemplates the separate ownership of law enforcement vehicles. We disagree. K.S.A. 28-107b addresses the methods available for providing vehicles to the sheriff and deputies. For the purpose of carrying out the provisions of K.S.A. 28-107b the board of county commissioners may either purchase or lease and finance the operation and maintenance of vehicles. The board may also authorize the use of private vehicles and pay mileage. Contrary to EMC's position, K.S.A. 28-107b does not mandate separate ownership of the patrol car.

The legislature has provided guidance on county-sheriff relationships. See K.S.A. 19-101 (a county is a "body corporate and politic" and is empowered to "purchase and hold real and personal estate for the use of the county"); K.S.A. 19-805(c) and (d) (sheriff submits a budget for the financing of the operation of the office to county commissioners; any personnel action taken by sheriff is subject to policies and procedures established by county commissioners; sheriff submits a budget for approval by county commissioners).

EMC contends that neither the county nor the sheriff intended the patrol car to have UM coverage. If either the sheriff or any of the county commissioners were deposed, their testimony is not in the record on appeal. We find no support in the record for EMC's assertion that *"[b]oth the County and the Sheriff asked for liability coverage only, and no UM coverage, for sheriff's patrol cars before, during, and after the negotiation of the contract of insurance."* Cook, in his deposition testimony, agreed with Tyler's counsel that to the best of his knowledge, Jefferson County paid for UM coverage on the patrol car. The EMC policy shows that the county obtained insurance coverage for vehicles operated by various departments, *i.e.,* the sheriff's department, appraiser's department, highway department, plan and zoning, weed department, maintenance, and health department.

According to Cook's deposition testimony, a 1994 Crown Victoria other than the patrol car was removed from the policy on July 1, 1996, after it had been totaled in an accident. A substitute vehicle was added to the policy, but there was no request for UM coverage. The record also includes a letter indicating that a 1991 Ford Taurus was transferred from the sheriff's department to the county appraiser. Attached to the letter was a copy of the Taurus' insurance card issued by EMC effective January 1, 1996, to January 1, 1997. The card indicated "liability" coverage. The Taurus had been listed on the December 1995 schedule that indicated that UM coverage was included. We find no explanation in the record for this change in coverage. The record is clear that no change of UM coverage was made for Tyler's patrol car.

We agree with the district court. Tyler is entitled to UM coverage, and the patrol car was owned by the County.

## The Workers Compensation Award

EMC argues that even if UM coverage applied to the patrol car, UM benefits would be limited because of Tyler's workers compensation award. EMC's contention involves the interpretation of K.S.A. 40-284(e)(4); thus, we have unlimited review. *Sebelius v. LaFaver*, 269 Kan. 918, 922, 9 P.3d 1260 (2000).

K.S.A. 40-284(e)(4) says:

"(e) Any insurer may provide for the exclusion or limitation of coverage:

. . . .

(4) to the extent that workers' compensation benefits apply."

The question here is to what extent did benefits apply? After a 10% reduction for comparative fault, elements of Tyler's final judgment against Hosler in the Shawnee County tort action were:

| | |
|---|---|
| (1) Noneconomic loss to date | $ 9,000. |
| (2) Future noneconomic loss to date | $ 72,000. |
| (3) Medical expenses to date | $ 36,000. |
| (4) Future medical expenses | $ 90,000. |
| (5) Loss of earnings & ability to earn | $ 8,100. |
| (6) Other economic loss to date | $ 900. |
| (7) Future loss of earnings & ability to earn | $185,400. |
| (8) Other future economic loss | $ 48,600. |
| (9) Loss of consortium | $ 0. |

Tyler received the following workers compensation award:

| | |
|---|---|
| Disability compensation | $ 16,098.25 |
| Authorized medical | $ 21,847.02 |
| Unauthorized medical | $ 500. |

The district court found that under K.S.A. 40-284(e)(4), EMC was entitled to a credit of $16,098.25 for economic losses and $22,347.02 for medical payments. The district court concluded that EMC owed Tyler $411,554.73 (the difference between the judgment in the tort case and Tyler's workers compensation benefits) plus accrued interest.

The EMC policy "limit of insurance" subsection said:

"We will not make a duplicate payment under this Coverage for any element of 'loss' for which payment has been made by or for anyone who is legally responsible.

"We will not pay for any element of 'loss' if the person is entitled to receive payment for the same element of 'loss' under any worker's compensation, disability benefits or similar law or personal injury protection coverage."

EMC reasons that the policy excludes any UM benefits for any portion of the tort award that reflects a loss compensable under workers compensation laws, even if Tyler did not collect workers compensation benefits for such a loss. EMC would have us exclude UM benefits for the portions of the $411,554.73 judgment that reflect medical expense, loss of earnings, or loss of the ability to earn, reducing the judgment against EMC to $81,000.

Tyler counters that the purpose and language of K.S.A. 40-284(e)(4) support a reading that only workers compensation benefits actually awarded to the injured party may be excluded. We agree.

We construe K.S.A. 40-284 liberally to carry out its remedial objectives to provide financial protection to the named insured for injuries caused by a negligent uninsured motorist. Any term of an insurance policy that limits the statutorily required UM coverage must be strictly construed. Insurance policy provisions which purport to condition, limit, or dilute the broad, unqualified uninsured motorist coverage mandated by K.S.A. 40-284 are void and unenforceable. *Stewart v. Capps*, 247 Kan. 549, 555-56, 802 P.2d 1226 (1990).

We reason that only awarded workers compensation benefits qualify as "duplicative." The legislature intended K.S.A. 40-284(e)(4) to permit an insured to recover UM/UIM benefits which are not duplicative of workers compensation benefits. Any other result would negate the legislature's intent to require UM/UIM coverage protection. See *Kilner v. State Farm Mut. Auto. Ins. Co.*, 252 Kan. 675, 686, 847 P.2d 1292 (1993). An insurer may exclude or limit its UM/UIM coverage only to the extent that duplicative workers compensation payments have been awarded.

Here, the district court correctly allowed a setoff for duplicate benefits awarded to Tyler. Any language in EMC's policy contrary

to the language of K.S.A. 40-284(e)(4) allowing a set off for duplicative workers compensation benefits is void and unenforceable.

EMC also argues that the "other insurance" clause in the policy reduces its liability. According to EMC, its coverages are excess if the accident vehicle is not owned by the named insured. Our ruling on the patrol car's ownership disposes of EMC's "other insurance" clause contention. Because the patrol car was owned by the County and covered by EMC's policy, any UM benefits would be paid by EMC, the primary insurance carrier.

## The Judgment

EMC claims error in the "form of the judgment" and in the award of prejudgment interest and attorney fees. Resolution involves questions of law, over which we have unlimited review. See *Kansas Baptist Convention v. Mesa Operating Ltd. Partnership*, 258 Kan. 226, 242, 898 P.2d 1131 (1995).

In awarding UM benefits to Tyler, the district court found that Tyler (1) was a permissive user, covered by a written insurance contract providing UM/UIM coverage, and (2) is entitled to collect the amount of the judgment he obtained against Hosler from EMC based upon the written insurance contract.

EMC points out that: (1) its policy provided no liability insurance for Hosler; (2) under K.S.A. 40-287, it would be entitled to subrogation rights against Hosler; and (3) it has no obligation to *pay* the judgment against Hosler. The district judge commented that he did not think anyone disputed these points. Tyler's counsel agreed.

EMC furthers its objection to the judgment form contending that the district court erroneously ordered it to pay the Shawnee County tort judgment, which would extinguish its subrogation rights against Hosler. EMC relies on *Ray v. Caudill*, 266 Kan. 921, 974 P.2d 560 (1999). In *Ray*, a UIM case, the heirs of a deceased truck driver obtained a $2,000,000 judgment against Caudill, the tortfeasor. The heirs filed a garnishment action to collect the $2,000,000 under the UIM provisions of the insurance policy on the truck. The district court granted summary judgment in favor of the heirs for $300,000 (the difference between the South Dakota

UIM policy limit of $350,000, and Caudill's $50,000 liability limit). Finding the lack of a statutory basis for garnishment, we reversed and remanded with directions to dismiss the garnishment action. 266 Kan. at 925.

Here, Tyler did not file a garnishment action. Instead, he claimed UM benefits under the EMC policy in a separate contract action against EMC and Farmers. The litigation path followed by Tyler is described in *Ray*. 266 Kan. 921, Syl. ¶ 2.

As Tyler points out, he used the measure of damages in the tort action to claim the amount owing in the contract action against EMC. As the insurer of the patrol car, after paying UM benefits to Tyler, EMC has K.S.A. 40-287 subrogation rights against Hosler. The judgment against EMC was based on contractual liability under the UM provision in the insurance contract. The district court did not err in rendering a judgment against EMC based on contractual liability.

### Interest

EMC also argues that the district court erroneously ordered it to pay prejudgment interest dating back to November 28, 1998, the date the judgment was rendered against Hosler in the Shawnee County tort suit.

According to EMC, Tyler's appeal from the workers compensation award prevented a final determination of the applicable UM benefits. Tyler argues that the damages became liquidated when the Shawnee County District Court determined that Hosler was an uninsured motorist and fixed the amount of damages arising out of the accident. In arguing that it was unnecessary to have a final determination of workers compensation benefits, Tyler maintains that "[t]he amount due is fixed by the court's entry of judgment, and EMC retains a right of recoupment in any amounts that Tyler may later collect from workers compensation."

K.S.A. 16-201 provides in part:

"Creditors shall be allowed to received interest at the rate of ten percent per annum, when no other rate of interest is agreed upon, for any money after it becomes due; for money lent or money due on settlement of account, from the day of liquidating the account and ascertaining the balance."

We considered the prejudgment interest question in *Kilner:* "A claim becomes liquidated when both the amount due and the date on which it is due are fixed and certain, or when the same becomes definitely ascertainable by mathematical computation." 252 Kan. at 686-67. We found that Kilner was not entitled to prejudgment interest. The parties had agreed that Kilner would be entitled to recover $75,000 if duplicative workers compensation payments were excluded. However, the insurer sought a setoff for all workers compensation benefits rather than simply duplicative benefits. The district court agreed with the insurer. Even though we reversed the district court, we held that the claim was not liquidated because the amount due Kilner was not certain. K.S.A. 16-201 did not apply.

Both Tyler and EMC advance *Mitchell v. Liberty Mut. Ins. Co.,* 271 Kan. 684, 24 P.3d 711 (2001), to support their positions. *Mitchell* involved two separate policies written by Liberty Mutual and Shelter Mutual providing UIM coverage. The district court found that prejudgment interest began to run on October 12, 1999, when the court entered its judgment finding Liberty Mutual not liable. On appeal, Mitchell disagreed and contended that interest should have begun on March 29, 1995, which was the date partial judgment was entered against the tortfeasor.

Mitchell argued that *Kilner* was distinguishable in that the amount of damage in Mitchell's case was not in dispute and the only issue was whether Shelter or Liberty would be liable. We said: "The fact that a good faith controversy exists as to whether the defendant is liable for the money does not preclude a grant of prejudgment interest under K.S.A. 16-201." 271 Kan. at 705. We found that in *Mitchell,* the question was really one of coverage, not amount. There was no question that Shelter was liable for $50,000. Thus, we concluded that the interest ran from the date of the judgment, March 29, 1995, at which time the amount Shelter was required to pay became fixed. 271 Kan. at 706.

The record here contains the administrative law judge's (ALJ) workers compensation award dated November 30, 1999, and the later nunc pro tunc order of June 29, 2000, amending the award to reflect that Tyler was not awarded future medical benefits. The

ALJ's award had originally shown that future medical compensation would be considered upon proper application. The Jefferson County District Court's March 15, 2001, memorandum decision shows the workers compensation award, totaling $38,445.27, as an undisputed, controlling fact.

Since the record shows that the question of future medical benefits was decided June 29, 2000, the *amount* of workers compensation was no longer in question as of that date. The district court is correct in ordering prejudgment interest; however, the key date is June 29, 2000, when the amount due and the date both were "fixed and certain."

### Attorney fees

EMC also takes issue with the district court's decision to award attorney fees under K.S.A. 40-256. We review the district court's decision regarding attorney fees under an abuse of discretion standard. *Evans v. Provident Life & Accident Ins. Co.*, 249 Kan. 248, 262-63, 815 P.2d 550 (1991). The issue is to be determined by the district court based on the facts and circumstances of each case. *Farm Bureau Mutual Ins. Co. v. Carr*, 215 Kan. 591, 598-99, 528 P.2d 134 (1974).

K.S.A. 40-256 provides, in part:

"[i]n all actions hereafter commenced, in which judgment is rendered against any insurance company . . ., if it appear[s] from the evidence that such company, . . . . has refused without just cause or excuse to pay the full amount of such loss, the court in rendering such judgment shall allow the plaintiff a reasonable sum as an attorney's fee for services in such action, including proceeding upon appeal, to be recovered and collected as a part of the costs."

The presence of a good faith legal controversy, particularly if it involves matter of first impression, may constitute just cause or excuse for insurer's refusal to pay. *DiBassie v. American Standard Ins. Co. of Wisconsin*, 8 Kan. App. 2d 515, 522-23, 661 P.2d 812 (1983). EMC argues that an issue of equitable estoppel was present here and represented an issue of first impression in Kansas. In its March 15, 2001, memorandum decision the court included the following "uncontested controlling" fact:

"36. Plaintiff sued Mark Hosler and Employers entered its appearance admitted [*sic*] that the vehicle that Mike Tyler was driving was insured by the Defendant Employers [EMC] and that there was underinsured motorist coverage and defended the actions of Mark Hosler in the case."

The above finding noted EMC's position in the Hosler tort case in Shawnee County. The district court determined EMC's liability based on the contract, not on the doctrine of equitable estoppel. In its May 24, 2001, journal entry clarifying the March 15, 2001, decision, the district court said:

"[T]he Court's decision was upon a finding of contractual liability and the Court did not determine liability against Employers Mutual Casualty Company based upon the legal theory of equitable estoppel."

We observe that EMC asserted its standing as a UM carrier to intervene, citing *Haas v. Freeman,* 236 Kan. 677, 693 P.2d 1199 (1985), in the Shawnee County tort action against Hosler. EMC, as a UM intervenor, twice unsuccessfully moved for a directed verdict in that case. We find no declaration or letter in the record from EMC similar to a reservation of rights letter. (Tyler says in his brief that EMC never issued such a letter). EMC's policy listed the patrol car as having UM coverage. The district court did not abuse its discretion in awarding attorney fees and costs.

### K.S.A. 40-284

EMC argues that K.S.A. 40-284 does not apply to an automobile liability policy purchased by a governmental entity. K.S.A. 40-3105(a) exempts government-owned vehicles from the KAIRA.

K.S.A. 40-284(a) says in part:

"No insurer shall be required to offer, provide or make available coverage conforming to this section [UM coverage] in connection with any excess policy, umbrella policy or any other policy which does not provide primary motor vehicle insurance for liabilities arising out of the ownership, maintenance, operation or use of a specifically insured motor vehicle."

EMC contends that under K.S.A. 40-284, Jefferson County was not *required* to provide UM coverage because the policy here was insuring a fleet of vehicles, rather than a policy insuring specific motor vehicles. We agree that Jefferson County was not required by law to purchase UM insurance on its vehicles; however, it chose

to do so. The EMC policy listed UM coverage on the patrol car. Although EMC raised the K.S.A. 40-284 issue below, it was not addressed by the district court. In his brief, Tyler notes that he did not argue to the district court that K.S.A. 40-284 mandated UM coverage; rather, Tyler argued that the County purchased UM coverage under the insurance policy. We do not need to reach the question of whether K.S.A. 40-284 applies to a liability policy covering a fleet of government vehicles. Tyler's claim against EMC is grounded on the contention that he was entitled to UM coverage because the County opted to purchase such coverage, not because K.S.A. 40-284 mandated such coverage. Under the facts here, the County paid and EMC collected a UM premium for coverage on the patrol car. Tyler was assigned to drive the car and was injured in a collision while on duty. It is common knowledge that deputy sheriffs drive county patrol cars. EMC contracted here for the UM coverage and must live up to its contract. If EMC did not intend to provide UM coverage for the patrol car and the other Jefferson County vehicles specifically listed in the policy, there should not have been a UM premium quoted, the coverage listed, and the premium accepted.

### Estoppel

Finally, Tyler argues in a purported cross-appeal that EMC is estopped from denying UM coverage on the patrol car because of its intervention in the Shawnee County tort case against Hosler and its admission that the patrol car was insured by EMC. Tyler failed to file a notice of cross-appeal. Thus, we do not have jurisdiction to consider this argument. See *Carlson v. Ferguson*, 270 Kan. 576, 584, 17 P.3d 333 (2001).

Affirmed in part, reversed in part, and remanded with directions to recalculate the interest due on the judgment from June 29, 2000, rather than from November 28, 1998.

ABBOTT, J., not participating.

CHRISTEL E. MARQUARDT, J., assigned.