**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**February 23, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

No. 05-5062

CLIFFORD EARL BROTHERS,

Defendant - Appellant.

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA
(D.C. NO. 04-CR-113-001-CVE)**

Submitted on the briefs:

James Fatigante, Tulsa, Oklahoma, for Defendant - Appellant.

David E. O'Meilia, United States Attorney, Kevin Danielson, Assistant United States Attorney, Tulsa, Oklahoma, for Plaintiff - Appellee.

Before **TACHA**, Chief Circuit Judge, and **ANDERSON** and **BALDOCK**, Circuit Judges.

**ANDERSON**, Circuit Judge.

Clifford Earl Brothers was convicted, following a jury trial, of being a convicted felon and armed career criminal in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1), and was sentenced to 240 months' imprisonment followed by five years' supervised release. He appeals his conviction and sentence, arguing that the district court erred (1) by dismissing a juror for cause, (2) by denying his motion to suppress evidence found during the search of his truck, (3) by determining that Brothers' prior convictions constituted "violent felonies" under the Armed Career Criminal Act, 18 U.S.C. § 924, and (4) by holding that the Armed Career Criminal Act is constitutional. For the reasons set forth below, we affirm.[*]

## BACKGROUND

On June 15, 2004, seeking to execute an Oklahoma felony warrant against Brothers, Tulsa Police Officers Mark Kennedy and Victor Regalado, together with U.S. Deputy Marshal Johnny Larkin, all in separate vehicles, set up surveillance at a house where Officer Kennedy had received a tip that Brothers might be located. They observed two individuals exiting the house and approaching a

---

[*]After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

pickup truck. According to his testimony in the motion to suppress hearing, Officer Regalado, who was in a separate vehicle to the west of the house, drove past the truck and was able to identify Brothers based on a photograph and previous contacts with Brothers. Officer Regalado informed Officer Kennedy and Deputy Larkin of his identification of Brothers by radio. Brothers entered the passenger side of the truck and the person with him, a female who was later identified as Jamie Kimbrel, began driving the truck eastbound. At the hearing, Officer Kennedy testified that he decided to let the truck drive into an open area before stopping it so that Brothers "couldn't run back in the house or . . . get . . . deeper into the neighborhood." Hr'g Tr. at 13, R. Vol. III.

Approximately two minutes later, Officer Kennedy further testified, he observed the truck pull into a Dollar General parking lot and observed "[t]he suspect, Mr. Brothers, . . . in the passenger's seat, and he was making movements down underneath the bench seat of the pickup like he was getting underneath the seat." Id. at 14. Officer Kennedy then activated the emergency equipment on his vehicle, exited the vehicle, and asked Brothers to step out of the pickup truck. Officer Kennedy and Deputy Larkin then approached the truck and placed Brothers in handcuffs, and Officer Kennedy did a pat-down search of Brothers. During the search, Officer Kennedy found "a bag that had a wad of something" he could not immediately identify. Id. at 16. He "pulled [the bag] out of [Brothers']

pocket" and found it to be a Crown Royal bag that was "loaded down with several rounds of nine-millimeter ammo." Id. According to Officer Kennedy, suspects often "put drugs, ammo, guns, and several illegal items into Crown Royal bags." Id. After Officer Kennedy found the ammunition, Brothers volunteered "that people had been after him, shooting at him." Id. at 17.

Officer Kennedy testified that, based on the movement he observed in the truck, the ammunition, Brothers' statement, and his personal knowledge that Brothers had a prior conviction for pointing a deadly weapon, Officer Kennedy "was worried about a handgun" in the truck and therefore searched the vehicle. Id. The search took place two or three minutes after Brothers had been handcuffed and his pockets searched. During the search, a handgun was discovered in the middle area underneath the seat.

An indictment was subsequently issued, charging Brothers with knowing possession of a firearm and ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1). The indictment listed three prior convictions for Brothers in Tulsa County district court of offenses punishable by imprisonment for more than one year: first degree burglary, on February 23, 1998; first degree rape, on March 5, 1993; and feloniously pointing a weapon, on February 23, 1998. Prior to trial, Brothers moved to suppress the firearm as evidence, arguing that it was the fruit of an illegal search of the pickup truck. Following a hearing, the district court

denied Brothers' motion, holding that the search of the truck was lawful as a search incident to Brothers' arrest or, alternatively, because Officer Kennedy had probable cause to believe the truck contained a weapon.

Trial proceedings began on January 18, 2005. After the jury was impaneled and sworn, the court informed the parties that one of the jurors was "upset about something related to jury selection and maybe the fact that she didn't disclose something to us." Trial Tr. at 3, R. Vol. IV. The juror in question was then brought before the court and counsel, and she informed them that she had a twin brother who had been imprisoned at the age of eighteen and had served thirteen years before being released three years prior, and that her grandfather had recently been killed in a dispute at her child's school. The juror indicated that she did not want to "be[] in here . . . around this kind of stuff" or to "decide someone's fate." Id. at 5.

The prosecutor moved to strike the juror for cause. Brothers' counsel objected "because [he] d[id]n't think at this point there's a specific bias one way or the other or any reason that she could not listen to the evidence and deliberate." Id. at 7. The court then asked the juror, "do you feel that because of the things that happened to your brother and to you and to your grandfather, that you would be unable to be fair to both sides?" Id. The juror responded that she had "no comments on that" but that "there's so much things that have happened,

[she] d[id]n't want to say he's guilty; [she] d[id]n't want to say he's not guilty." Id. She further indicated that being in the courtroom made her "flash back on everything that went down with" her, and that she would not be able to concentrate on the trial. Id. at 8. The court responded, "So you have more than just an issue with regard to deciding someone's fate. It's hard for you to even just sit here . . . ." Id. The court then excused the juror for cause.

At the conclusion of the trial, the jury found Brothers guilty of the offense charged in the indictment. The United States Probation Office then prepared a Presentence Report ("PSR"). The PSR indicated that Brothers' three prior convictions qualified as convictions for a violent felony, as defined in the Armed Career Criminal Act, 18 U.S.C. § 924(e)(2), and that Brothers was therefore an armed career criminal under that Act, leading to a mandatory minimum sentence of fifteen years and a sentencing level of 33 under United States Sentencing Commission, Guidelines Manual ("USSG"), §4B1.4(b)(3)(B) (2004). Combined with a criminal history category of VI, this sentencing level produces a guideline range for imprisonment of 235 to 293 months.

Brothers objected to the PSR's determination that he was subject to the Armed Career Criminal Act, first on the basis that the government had offered no evidence at trial, nor had the jury found, that Brothers had three violent felony convictions; and second on the basis that the Armed Career Criminal Act was

unconstitutional under the Sixth Amendment, the Double Jeopardy Clause, and the reasoning of United States v. Booker, 125 S. Ct. 738 (2005), and Apprendi v. New Jersey, 530 U.S. 466 (2000). Brothers' first objection focused on whether his prior conviction of feloniously pointing a weapon qualified as a violent felony under the Act. Considering that a legal issue, the district court ruled that the offense of feloniously pointing a weapon, as defined in Okla. Stat. Ann. tit. 21, § 1289.16, "clearly has as an element the threatened use of physical force against another person and meets the statutory definition of violent felony." Sentencing Hr'g Tr. at 13, R. Vol. V. The court also held that Brothers' constitutional challenge failed under settled Tenth Circuit law. Considering the guideline range as advisory in accord with Booker, and taking into account the factors set forth in 18 U.S.C. § 3553(a), the court sentenced Brothers to 240 months' imprisonment, followed by five years' supervised release, and imposed a $5000 fine. Brothers appealed his conviction and sentence, raising the arguments set forth above.

## DISCUSSION

### I.   DISMISSAL OF JUROR

Brothers first argues that the district court erred when it dismissed a juror for cause after the jury was impaneled. Where, as here, the district court relied on its own face-to-face credibility assessment of a juror in determining whether the

juror should be excused, we review the court's decision for an abuse of discretion. United States v. Chanthadara, 230 F.3d 1237, 1269 (10th Cir. 2000).

We have stated that the determination of "whether to excuse a juror rests on whether the juror can remain impartial." United States v. Black, 369 F.3d 1171, 1176 (10th Cir. 2004) (internal quotation omitted). This rule is based on a defendant's Sixth Amendment right to a fair trial "by an impartial jury." U.S. Const. amend. VI; see United States v. Scrull, 321 F.3d 1270, 1278 (10th Cir. 2003). The Supreme Court has defined an impartial jury in this context as "a jury capable and willing to decide the case solely on the evidence before it." Smith v. Phillips, 455 U.S. 209, 217 (1982). Clearly, such a jury must be composed of members who not only are free of bias in favor of or against a particular party but are also able, in a more basic sense, to carry out their function. Thus, Federal Rule of Criminal Procedure 24(c)(1) authorizes a district court to "replace any jurors who are unable to perform or who are disqualified from performing their duties." Fed. R. Crim. P. 24(c)(1); see Black, 369 F.3d at 1176. Federal Rule of Criminal Procedure 23(b)(2)(B) also indicates that a court may "find[] it necessary to excuse a juror for good cause after the trial begins." Fed. R. Crim. P. 23(b)(2)(B); see United States v. Anderson, 303 F.3d 847, 853 (7th Cir. 2002) (recognizing that "[c]ourts have found [good] cause to dismiss jurors for a variety of reasons, including juror illness or unavailability, and evidence indicating that

the juror is no longer able to render an impartial verdict"); United States v. Beard, 161 F.3d 1190, 1193 (9th Cir. 1998) ("Although '[good] cause' generally focuses on sickness, family emergency, or juror misconduct, it embraces all kinds of problems—temporary as well as those of long duration—that may befall a juror during [a trial]." (internal quotation omitted)).

Following these principles, we do not believe the court here abused its discretion in dismissing the juror in question. As described above, the juror came forward after the jury was impaneled but before trial proceedings began. She indicated a strong preference against serving on the jury due to traumatic experiences in her past, which, she maintained, would interfere with her concentration as a juror. Brothers argues that these concerns did not qualify the juror to be excused because they indicated nothing about "[h]er ability to be fair to both sides." Appellant's Op. Br. at 10. However, at least one other court has recognized an inability to concentrate due to traumatic circumstances as sufficient cause for dismissing a juror under Rule 24(c). See United States v. Virgen-Moreno, 265 F.3d 276, 288 (5th Cir. 2001) (affirming dismissal of juror who maintained she could not concentrate due to three recent deaths of family and friends); see also United States v. Marrowbone, 211 F.3d 452, 456 (8th Cir. 2000) (upholding prosecutor's peremptory challenge of juror based on juror's statement

that "she had 'too much going on at home' and would not be able to concentrate on the case").

Moreover, a court's decision to replace a juror under Rule 24(c) is generally not reversible unless it resulted in prejudice to the defendant. See Virgen-Moreno, 265 F.3d at 288 (indicating that the district court's removal of a juror under Rule 24(c) would not be disturbed unless the removal "has prejudiced the defendant," and that "we will find prejudice only if the juror was discharged without factual support or for a legally irrelevant reason" (internal quotation omitted)); United States v. Cantu, 229 F.3d 544, 550 (6th Cir. 2000) ("Defendant has failed to demonstrate any prejudice to him resulting from the substitution of the alternate juror."); United States v. Purdy, 144 F.3d 241, 247 (2d Cir. 1998) ("District courts . . . have broad discretion under [Rule] 24(c) to replace a juror at any time before the jury retires if there is reasonable cause to do so, and a reviewing court will only find abuse of that discretion where there is bias or prejudice to the defendant." (internal quotation omitted)); United States v. Donato, 99 F.3d 426, 430 (D.C. Cir. 1996) (holding that a Rule 24(c) error "will be considered harmless so long as we can say with fair assurance . . . that the judgment was not substantially swayed by the error" (internal quotation omitted)); United States v. Vega, 72 F.3d 507, 512 (7th Cir. 1995) ("[W]e will not overturn a conviction for a Rule 24(c) violation unless appellant can show prejudice.");

United States v. Alexander, 48 F.3d 1477, 1485 (9th Cir. 1995) ("Because the defendants make no assertion that they suffered bias or prejudice, and do not claim that the alternate juror was not impartial, their convictions would not be subject to reversal even were we to conclude that dismissal of juror Ragsdale was an abuse of the district court's discretion." (internal quotation and alteration marks omitted)).

Here, there is no indication that the court's replacement of the juror in question with an alternate juror resulted in a biased jury or an otherwise unfair trial. Brothers argues that "[i]t is unknown what impact [the dismissed juror] would have had on the deliberations in this case" but that, "based upon all the qualities she had as a juror, her removal without sufficient cause changed the complexion of the jury and the verdict." Appellant's Op. Br. at 10. However, Brothers fails to point to any concrete factor that moves this assertion beyond the realm of mere speculation. Moreover, under the circumstances here, where the juror in question was replaced before trial proceedings had even begun, it is difficult to imagine that the replacement had any impact on the fairness of the trial. Because Brothers has not provided any basis for concluding that he was prejudiced by the district court's dismissal of this juror, we reject his claim that the court's decision constitutes reversible error.

## II.   MOTION TO SUPPRESS

Brothers next argues that the district court erred in denying his motion to suppress the evidence Officer Kennedy discovered when searching the pickup truck after Brothers' arrest. As indicated above, the district court denied the motion on the basis that the search of the truck was in accord with Fourth Amendment requirements as a search incident to Brothers' arrest, as approved in New York v. Belton, 453 U.S. 454, 460 (1981). According to the district court, all testimony at the suppression hearing was in agreement "that the search occurred very shortly after Brothers was handcuffed." Order at 3, R. Vol. I, tab 26. Brothers objects that the search did not meet the requirements of a valid search incident to an arrest because, at the time of the search, "Mr. Brothers was outside the vehicle and . . . he was handcuffed behind his back" and "made no attempt or threat to destroy evidence." Appellant's Br. at 10-11.

"'When reviewing a district court's denial of a motion to suppress, we accept its factual findings unless clearly erroneous and view the evidence in the light most favorable to the government.'" United States v. Tueller, 349 F.3d 1235, 1237 (10th Cir. 2003) (quoting United States v. Hargus, 128 F.3d 1358, 1361 (10th Cir. 1997)). However, "'the ultimate determination of Fourth Amendment reasonableness is a question of law which we review de novo.'" Id. (quoting United States v. Hill, 199 F.3d 1143, 1147 (10th Cir. 1999)).

Here, we agree with the district court that Officer Kennedy's search was valid as a search incident to a custodial arrest. In Belton, the Supreme Court established the bright-line rule that, "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." 453 U.S. at 460 (footnotes omitted); see Thornton v. United States, 541 U.S. 615, 620-21 (2004); United States v. Humphrey, 208 F.3d 1190, 1202 (10th Cir. 2000). This rule applies "without regard to the fact that the search occurred after [the] [d]efendant had been restrained." Id.; see also United States v. Cotton, 751 F.2d 1146, 1148 (10th Cir. 1985) (holding Belton applied even though defendant was handcuffed and outside the vehicle at the time search was made). There is no question here that Brothers was taken into custody pursuant to an outstanding warrant, that he was still at the scene of the arrest at the time of the search, and that the search occurred within minutes of his arrest. Cf. United States v. Dennison, 410 F.3d 1203, 1209 (10th Cir. 2005) (holding search is not valid under Belton rule where it takes place after defendant was "removed from the scene, and en route to the police station"). We therefore affirm the district court's ruling on this issue.

## III.   ARMED CAREER CRIMINAL ACT

Brothers' remaining arguments concern his qualification as an armed career criminal under 18 U.S.C. § 924(e), and the constitutionality of that statute. Essentially, Brothers argues that, under Apprendi v. New Jersey, 530 U.S. 466 (2000), and United States v. Booker, 125 S. Ct. 738 (2005), a jury, rather than a judge, must make the determination that a particular offense qualifies as a "violent felony" for purposes of § 924(e). He thus simply repeats arguments that we have already rejected in United States v. Moore, 401 F.3d 1220, 1224-25 (10th Cir. 2005), and United States v. Williams, 403 F.3d 1188, 1198 (10th Cir. 2005). We cannot overturn these prior decisions "barring en banc reconsideration, a superseding contrary Supreme Court decision, or authorization of all currently active judges on the court." United States v. Edward J., 224 F.3d 1216, 1220 (10th Cir. 2000). Brothers does not argue that the district court's conclusion that the offense under Oklahoma law of feloniously pointing a weapon, Okla. Stat. Ann. tit. 21, § 1289.16, qualifies as a "violent felony" under § 924(e)(2)(B)(I) is erroneous for any other reason, nor do we perceive any error in the court's analysis. We therefore affirm the district court's rulings on these issues.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.