**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**May 3, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

　　　　Plaintiff - Appellee,

v.

TUXA TILTON BALLARD,

　　　　Defendant - Appellant.

No. 05-5156

(N.D. Oklahoma)

(D.C. No. 04-CR-210-C)

---

**ORDER AND JUDGMENT***

---

Before **TACHA,** Chief Circuit Judge, **ANDERSON** and **BALDOCK**, Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Tuxa Tilton Ballard was convicted, following a jury trial, of possession of a firearm and ammunition while having prior felony convictions, in violation of 18

---

*This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

U.S.C. §§ 922(g)(1) and 924(e). He was sentenced to 240 months' imprisonment, followed by five years of supervised release, and assessed a fine of $5000 and a special assessment of $100. He appeals his conviction and sentence. For the reasons set forth below, we affirm.

## BACKGROUND

On October 3, 2004, at approximately 10:30 p.m., Tulsa police officer Gene Hogan was investigating an armed robbery on 62nd Street, east of Peoria Avenue, when he heard a gunshot to his west. Shortly afterwards, according to Officer Hogan's later testimony, he "heard tires squealing" and saw a green Jeep turning from Peoria eastbound onto 62nd Street, away from the direction of the gunshot, and the Jeep then passed him "at an extremely high rate of speed." Tr. of Mot. to Suppress Hr'g at 7, R. Vol. III. According to Officer Hogan, the Jeep was traveling "between 55 and 60 miles an hour" in a residential area, where the speed limit was 25 miles per hour. Id. at 8.

Officer Hogan then pursued the Jeep, followed by Officer Adam Ashley in a separate vehicle. The Jeep failed to stop at a stop sign and turned south onto a dead end street, and Officer Hogan activated his emergency lights. The Jeep then turned around to face the oncoming police car, leaving its headlights shining into the police car and leaving its engine running. Officer Hogan stopped and

-2-

reported his location but could not read the Jeep's license plate because of its headlights. He then yelled to the driver, who was later identified as Ballard, to turn the headlights off, but Ballard did not respond.

Officer Hogan testified that he did not want to approach the Jeep directly for safety reasons. He therefore told Officer Ashley, who had pulled up beside him, to cover him while Officer Hogan went through neighboring yards to approach the Jeep from behind. Officer Ashley did so with his gun drawn. As Officer Hogan approached the Jeep, with his gun also drawn, he saw that the rear wing window on the driver's side was broken. Officer Hogan testified that, based on his training and experience, broken windows "can . . . be an indication that the vehicle is stolen." Id. at 11. Officer Hogan also observed on his approach to the Jeep that Ballard had put his hands "up in a raised position." Id. at 14. The officer testified that in his experience it was uncommon for a driver to put his hands up without being commanded, and that this made him think that Ballard "maybe . . . had had some prior . . . contact with officers." Id. at 15.

Officer Hogan then spoke to Ballard, asking him "why he was in such a hurry." Id. at 13. According to Officer Hogan's testimony, Ballard responded that he "was going to a friend's apartment." Id. Ballard further stated that the Jeep belonged to "a friend." Id. The officer testified that Ballard's answers to

-3-

these questions were "slow in coming, delayed," and made him suspect that Ballard was "maybe under the influence of drugs or intoxicants." Id. at 14.

Meanwhile, Officer Hogan had radioed in the license plate number on the Jeep. Dispatch reported back that the license belonged to a 1985 Jeep and that there was no report of its being stolen. However, Officer Hogan testified that, based on his familiarity with his own 1988 Jeep, older Jeeps were "a lot more square" whereas this Jeep was "more round." Id. at 12-13. He was therefore "certain that was not an '85 Jeep," id. at 13, and wanted to read the VIN number on the Jeep's dashboard in order to check whether the vehicle was stolen.

Based on his safety concerns in looking for the VIN number while Ballard sat in the vehicle, Officer Hogan asked Officer Ashley to get Ballard out of the Jeep. Officer Ashley testified that he asked Ballard to step out of the Jeep, and Ballard did so. Officer Ashley then asked Ballard if he had any weapons and if he "could pat him down for weapons." Id. at 58. According to Officer Ashley, Ballard said that he did not have any weapons and responded "no problem" to the pat-down. Id. While performing the pat-down, Officer Ashley "felt a weapon" in Ballard's waistband. Id. at 59. The officer then "pinned [Ballard] up against the vehicle and yelled 'gun'" in order to alert Officer Hogan and other officers who were then present. Id. As two officers started running towards them, Ballard "started bucking . . . trying to fight" and continued fighting as they fell to the

-4-

ground, until three officers were able "to get handcuffs on him" and place him under arrest.  Id. at 59-60.  The weapon was identified as a six-shot revolver and contained five rounds of ammunition.

Ballard was indicted on December 9, 2004, on a charge of having violated 18 U.S.C. §§ 922(g)(1) and 924(e), based on his possession of a firearm and ammunition after having been convicted of a number of felonies.  He moved to suppress the evidence of the gun and ammunition, alleging that the pat-down search had been in violation of the Fourth Amendment.  The district court denied the motion.  A jury trial was then held, and Ballard was convicted on April 18, 2005.

The United States Probation Office then prepared a presentence report ("PSR"), discussing factors relevant to sentencing and sentencing options.  The PSR indicated that Ballard qualified as an Armed Career Criminal under 18 U.S.C. § 924(e) and therefore was subject to a fifteen-year statutory minimum term of imprisonment.  The PSR based this assessment on its conclusion that Ballard had at least three prior "violent felony" convictions, based on two prior convictions for escape from a penal institution, and two prior second-degree burglary convictions.  PSR ¶ 22, R. Vol. II.

Ballard filed two objections to the PSR.  He first argued that the court's acceptance of its recommendation that he be sentenced as an Armed Career

Criminal would violate the Sixth Amendment, as interpreted by the Supreme Court in Apprendi v. New Jersey, 530 U.S. 466 (2000), and United States v. Booker, 543 U.S. 220 (2005). He also argued that his two prior convictions for escape from a penal institution did not constitute "violent felon[ies]" for purposes of § 924(e) and that he therefore did not qualify as an Armed Career Criminal.

The district court rejected both of these objections and, based on the factors set forth in 18 U.S.C. § 3553(a), sentenced Ballard to 240 months' imprisonment, as indicated above. Ballard appeals, arguing that the district court erred in denying his motion to suppress and in rejecting his two objections to the PSR.

## DISCUSSION

### I.   Motion to Suppress

"When reviewing the district court's denial of a motion to suppress, we view the evidence in the light most favorable to the government and accept the district court's factual findings unless they are clearly erroneous." United States v. Grimmett, 439 F.3d 1263, 1268 (10th Cir. 2006). "The ultimate question of reasonableness under the Fourth Amendment is a legal conclusion that we review de novo." Id. In the context of traffic stops, we determine reasonableness using the framework set forth in Terry v. Ohio, 392 U.S. 1 (1968), "asking first 'whether the officer's action was justified at its inception,' and second 'whether it

was reasonably related in scope to the circumstances which justified the interference in the first place.'" United States v. Bradford, 423 F.3d 1149, 1156 (10th Cir. 2005) (quoting Terry, 392 U.S. at 20).

Here, Ballard does not contest the reasonableness of the initial stop. However, he argues, as he did below, that Officer Ashley's pat-down search was not justified. We disagree.

During the course of a traffic stop, police may "perform a 'patdown' of a driver . . . upon reasonable suspicion that the[] [driver] may be armed and dangerous." Knowles v. Iowa, 525 U.S. 113, 118 (1998); see also United States v. Dennison, 410 F.3d 1203, 1211 (10th Cir. 2005). "[R]easonableness is measured in objective terms by examining the totality of the circumstances." United States v. Holt, 264 F.3d 1215, 1220 (10th Cir. 2001) (en banc) (internal quotation omitted). There must exist "specific articulable facts" to support the officer's reasonable suspicion. United States v. Williams, 403 F.3d 1203, 1206 (10th Cir. 2005).

The district court held that the following facts justified Officer Ashley's patdown search in this case:

> (1) [Ballard] pulled over facing the police car; (2) he put his hands in the air . . . without being directed to do so; (3) he failed to follow instructions; (4) he appeared to be under the influence of drugs; and finally (5) he [had been] speeding through a residential neighborhood, moving away from a location from whence the officers had just moments earlier heard a gunshot.

Order at 5, R. Vol. I, doc. 30. Ballard argues that these facts do not support a reasonable suspicion that he was armed and dangerous. He suggests that pulling around to face the officers was natural based on the cul-de-sac nature of the road, and that raising his hands in the air was a normal response to the officers' having drawn their guns. We have stated, however, that "[a] law enforcement officer may rely upon his training and experience [to identify suspicious actions] without inquiring of a defendant as to innocent explanations." Williams, 403 F.3d at 1207.

Based on our de novo review, we conclude Officer Ashley had reasonable suspicion to perform the patdown search. As the district court found, Ballard not only left the headlights of the Jeep on but also left the engine running. The fact that he stopped at all does not, as Ballard contends, strongly suggest his willingness to comply with the officers' instructions, given that he had turned into a dead end street. The totality of the circumstances here, including these facts, together with the gunshot, Ballard's speeding away from the direction where the shot was heard, and failing to comply with the officers' orders to turn off his headlights, were sufficient to raise a reasonable suspicion that Ballard might be armed and dangerous. We therefore affirm the district court's denial of Ballard's motion to suppress.

**II.   PSR Objections**

The issues Ballard raises in regard to his sentence under the Armed Career Criminal Act, 18 U.S.C. § 924(e), are legal issues subject to de novo review. United States v. Dowell, 430 F.3d 1100, 1109 (10th Cir. 2005) (Sixth Amendment issue); United States v. King, 422 F.3d 1055, 1057 (10th Cir. 2005) (issue regarding qualification of "violent felony" under Armed Career Criminal Act). However, as Ballard concedes, our review of these issues cannot result in a resolution in his favor because both issues have already been decided to the contrary in this circuit.  See United States v. Brothers, 438 F.3d 1068, 1074 (10th Cir. 2006) ("We cannot overturn [our] prior decisions barring en banc reconsideration, a superseding contrary Supreme Court decision, or authorization of all currently active judges on the court." (internal quotation omitted)).

Specifically, Ballard's argument that his prior convictions for escape from a penal institution do not qualify as "violent felon[ies]" for purposes of the Act was resolved to the contrary in United States v. Moudy, 132 F.3d 618, 620 (10th Cir. 1998) (holding that the rationale "for holding escape to be a [violent felony] appl[ies] to *all* escapes, whether or not violence was actually involved"). Similarly, Ballard's argument that the district court's application of the Armed Career Criminal Act to his sentence violates the Sixth Amendment and Apprendi was resolved to the contrary in United States v. Moore, 401 F.3d 1220, 1225 (10th

Cir. 2005) (holding that "[b]ecause determining whether a given felony constitutes a 'violent felony' is a question of law and not fact, the Sixth Amendment does not require that determination to be made by a jury"). As Ballard states that he raises these arguments here only for the purpose of preserving them for further appeal, we need not address them further, and we affirm the district court's rejection of these objections.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.

ENTERED FOR THE COURT


Stephen H. Anderson
Circuit Judge