FILED
United States Court of Appeals
Tenth Circuit

July 19, 2011

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

LEONARD A. HASKINS,

Defendant - Appellant.

No. 10-3211

(D. Kansas)

(D.C. No. 6:09-CR-10108-EFM-1)

ORDER AND JUDGMENT[*]

Before **HARTZ**, **O'BRIEN**, and **MATHESON**, Circuit Judges.

Defendant Leonard Haskins was charged in the United States District Court for the District of Kansas with being a felon in possession of ammunition. *See* 18 U.S.C. § 922(g)(1); *id.* § 924(a)(2). The district court denied Defendant's motion to suppress the ammunition after ruling that (1) Wichita, Kansas, police officer Jonathan Estrada had lawfully stopped Defendant's car, and (2) under the good-faith exception to the exclusionary rule, the evidence obtained in the search of Defendant's car incident to his arrest would not be suppressed even though the

---

[*]This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

search was unlawful under the later Supreme Court decision in *Arizona v. Gant*, 556 U.S. 332. Defendant appeals.

We have jurisdiction under 28 U.S.C. § 1291 and affirm. The information known to Officer Estrada gave him reasonable suspicion to believe that Defendant's car was in violation of a Wichita ordinance. And the district court properly applied the good-faith exception. *See Davis v. United States*, 131 S. Ct. 2419, 2423–24 (2011).

## I.    BACKGROUND

While Officer Estrada was driving his patrol car at 12:09 p.m. on November 25, 2008, he saw a blue Chevrolet Impala stop at an intersection. The Impala's brake lights turned on when the car stopped; but when the car began moving again and its brake lights went off, Estrada noticed that the right taillight was not operational. Estrada pursued the Impala, intending to stop it and issue its driver a citation for the defective taillight.

The Impala eventually stopped in the driveway of a private residence. Officer Estrada turned on his emergency lights and pulled up behind the car. He told Defendant, who was already leaving the Impala, to remain inside; but Defendant shut the car door, stated that he was going to talk to someone in the house, and started walking away. Estrada commanded Defendant to stop. Defendant ignored the command until Estrada fired his taser. Although it malfunctioned, Defendant complied with Estrada's order to stop and place his

hands on his car. But only briefly. As Estrada attempted to reset his taser, Defendant took off running away from the house. After being caught by another officer a few blocks away, Defendant was arrested, handcuffed, and locked in the back seat of a patrol car near his own car.

Officer Estrada then searched the Impala incident to Defendant's arrest. In the driver's seat he found a jacket containing two .38 caliber bullets in one of its pockets.

After being indicted, Defendant moved to suppress the bullets, arguing that both the initial stop and the search of his car incident to his arrest were illegal. The district court denied the motion. Defendant entered a conditional plea of guilty (allowing him to appeal the denial of his suppression motion) and was sentenced to 37 months' imprisonment.

## II. DISCUSSION

Defendant contends that the district court erred in denying his motion to suppress because (1) the initial traffic stop was not justified at its inception; and (2) even if the traffic stop was legal, the search incident to his arrest was illegal under *Gant*, and the good-faith exception to the exclusionary rule should not apply. "In reviewing the denial of a motion to suppress, we accept the factual findings of the district court unless they are clearly erroneous. The ultimate determination of reasonableness under the Fourth Amendment is a question of

law, which we review de novo." *United States v. Albert*, 579 F.3d 1188, 1193 (10th Cir. 2009) (internal quotation marks omitted).

### A. The Initial Traffic Stop

"To determine the initial validity of a traffic stop, we ask whether the stop was objectively justified." *United States v. DeGasso*, 369 F.3d 1139, 1143 (10th Cir. 2004) (internal quotation marks omitted). A stop is objectively justified if it "is based on an observed traffic violation or if the police officer has reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring." *United States v. Eckhart*, 569 F.3d 1263, 1271 (10th Cir. 2009) (internal quotation marks omitted). The officer's actual motivations or subjective intentions and beliefs are irrelevant. *See Whren v. United States*, 517 U.S. 806, 813 (1996). In particular, if the facts known to the officer support reasonable suspicion of a traffic offense, it does not matter that the officer was motivated by a belief that a different offense (even one for which there was not reasonable suspicion) had been committed. *See Eckhart*, 569 F.3d at 1271–72.

In this case Officer Estrada had the requisite reasonable suspicion to stop Defendant because he had observed that the Impala's taillight did not work and Wichita ordinances prohibit driving a vehicle with an inoperable taillight. One ordinance, entitled "Lights, reflectors on vehicles," requires every vehicle on Wichita's roadways to "be equipped with at least two taillamps." Wichita, Kan.,

Code § 11.60.040(a).[1]  A second ordinance, entitled "Driving without proper

equipment unlawful," provides that "[i]t is a traffic infraction for any person to

drive or move . . . any vehicle . . . which . . . is not *at all time* equipped with such

lamps and other equipment *in proper condition and adjustment* as required in this

chapter."  *Id.* § 11.60.010(a) (emphasis added)[2].  Taken together, these ordinances

----

[1]Subsection (a) reads in full:

(a)  Every motor vehicle or trailer, semitrailer, pole trailer, and any other vehicle which is being drawn at the end of a combination of vehicles, *shall be equipped with at least two taillamps* mounted on the rear, which when lighted as required in Section 11.60.030, shall emit red light plainly visible from a distance of one thousand feet to the rear, except that passenger cars manufactured or assembled prior to July 1, 1959, shall have at least one taillamp.  On a combination of vehicles, only the taillamps on the rearmost vehicle need actually be seen from the distance specified.  On vehicles equipped with more than one taillamp, the lamps shall be mounted on the same level and as widely spaced laterally as practicable.

Wichita, Kan., Code § 11.60.040 (emphasis added).

[2] The full subsection provides:

(a)  *It is a traffic infraction for any person to drive or move*, or for the owner to cause or knowingly permit to be driven or moved on any highway, *any vehicle* or combination of vehicles which is in such unsafe condition as to endanger any person, or which does not contain those parts or is *not at all time equipped with such lamps and other equipment in proper condition and adjustment as required in this chapter*, or which is equipped in any manner in violation of this chapter, or for any person to do any act forbidden or fail to perform any act required under this chapter.

*Id.* § 11.60.010 (emphasis added).

make clear that a vehicle being driven in Wichita must be equipped with operational taillights regardless of the time of day.

On appeal Defendant asserts that Officer Estrada initiated the stop because he incorrectly believed that Defendant had violated Wichita ordinance § 11.60.030.  That ordinance (entitled "Lighting headlamps—When") requires that taillights be illuminated "from a half hour after sunset to a half hour before sunrise and at any other time when, due to insufficient light or unfavorable atmospheric conditions, persons and vehicles on the highway are not clearly discernable at a distance of one thousand feet ahead."  *Id.* § 11.60.030(a). Defendant argues that he had not violated that ordinance because the stop occurred shortly after noon on a sunny day.  As we previously explained, however, Estrada's state of mind is irrelevant.  A stop is supported by reasonable suspicion if, as here, the facts known to the officer indicate that an ordinance is being violated even if the officer mistakenly believes that another ordinance is the one that is being violated.  *See Eckhart*, 569 F.3d at 1271 (although an officer "was incorrect about which provision of law had in fact been violated" at the time he initiated the stop, the stop was lawful because "he was not mistaken that what he observed . . . violated [the] law").

Defendant also argues that ordinance § 11.60.010(a) itself requires that taillights be operational only when § 11.60.030 requires them to be illuminated. Thus, according to Defendant, his lights did not have to be in working order when

Officer Estrada stopped him at noon on a sunny day—he could have taken his taillight to be repaired before sundown or he could simply have refrained from driving the Impala when it was dark. We reject that argument. Section 11.60.010(a) requires that a vehicle be "*at all time equipped* with such lamps and other equipment *in proper condition and adjustment*." Wichita, Kan., Code § 11.60.010(a) (emphasis added). This language requires more than just that equipment work when it is needed. Officers need not wait until sundown to issue a citation to a driver whose vehicle is not properly equipped for travel after dark. In particular, the ordinance specifically includes "lamps" as equipment that must be functional; yet if the ordinance meant what Defendant says it means, the word *lamps* could be omitted because ordinance § 11.60.040 already requires lamps to work (and be turned on) at designated times. We do not read *Carlson v. Ferguson*, 17 P.3d 333 (Kan. 2001), as suggesting anything different. Although it addressed a duty to have rear taillights on a towed vehicle, it considered state law, not a Wichita ordinance; and state law did not require the vehicle in question to be equipped with lamps "at all time," but only at "all times specified in K.S.A. 8–1703," *id.* at 336–37 (internal quotation marks omitted), which required lighted lamps only from sunset to sunrise and when it is otherwise dark. The Wichita ordinance's "at all time" requirement is not qualified in a similar manner.

We conclude that Officer Estrada had an objectively reasonable suspicion that Defendant had committed an equipment violation when he initiated the stop. The stop was therefore lawful.

## B. The Vehicle Search

On appeal Defendant does not challenge the lawfulness of his arrest (assuming the traffic stop to have been lawful). Nor does he dispute that the search of his Impala was incident to his arrest. Also, he recognizes that under Tenth Circuit precedent predating *Gant* the search would have been lawful, *see United States v. Brothers*, 438 F.3d 1068, 1073 (10th Cir. 2006) (interpreting *New York v. Belton*, 453 U.S. 454, 460 (1981), to "establish[] the bright-line rule that, 'when a policeman ha[d] made a lawful custodial arrest of the occupant of an automobile, he [could], as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." (quoting *Belton* 453 U.S. at 460)), *abrogation recognized by United States v. McCane*, 573 F.3d 1037, 1041–42 (10th Cir. 2009). Defendant argues only (1) that under the Supreme Court's decision in *Gant*, the search incident to his arrest was unlawful, and (2) that the good-faith exception to the exclusionary rule should not apply, so the fruits of the car search should have been suppressed. The second component of that argument fails under the recent precedents of *Davis* and *United States v. Soza*, No. 10-2196, 2011 WL 2643901 (10th Cir. July 7, 2011), because the search of Defendant's

vehicle was after *Brothers* and before *Gant*. We therefore affirm the district court's denial of Defendant's motion to suppress.

## III. CONCLUSION

We AFFIRM Defendant's conviction and sentence.

ENTERED FOR THE COURT


Harris L Hartz
Circuit Judge