# United States Bankruptcy Appellate Panel

## For the Eighth Circuit

_____

No. 14-6047

_____

In re: Miller Automotive Group Inc., doing business as Miller Chrysler Dodge, doing business as Miller Chrysler Dodge Jeep Inc.

*Debtor*

------------------------------

William L. Needler

*Movant - Appellant*

v.

Daniel J. Casamatta

*U.S. Trustee - Appellee*

_____

Appeal from United States Bankruptcy Court
for the Western District of Missouri - Jefferson City

_____

Submitted: July 22, 2015
Filed: August 12, 2015

_____

Before SCHERMER, SALADINO and SHODEEN, Bankruptcy Judges.

_____

SALADINO, Bankruptcy Judge.

William L. Needler and William L. Needler and Associates, Ltd. (collectively "Needler") appeal from an order of the bankruptcy court[1] imposing sanctions against Needler and a subsequent order denying Needler's motion to reconsider. We have jurisdiction over this appeal from entry of the bankruptcy court's final order pursuant to 28 U.S.C. § 158(b). For the reasons set forth below, we affirm.

## *FACTUAL BACKGROUND*

On January 11, 2013, Needler electronically filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Western District of Missouri on behalf of "Miller Chrysler Dodge Inc." Because Needler is not admitted to practice in the Western District of Missouri, he also filed a motion to appear pro hac vice and an application to be employed as debtor's attorney. Over the objection of the United States Trustee, the bankruptcy court approved Needler's application with the admonition that his fees and activities would be closely scrutinized.

The United States Trustee soon discovered that the entity "Miller Chrysler Dodge Inc." did not legally exist and, when the error was not timely corrected, filed a motion to dismiss the Chapter 11 case. The motion noted that a similarly named entity, "Miller Chrysler Dodge Jeep, Inc.," did exist at one time, but in 2011 was merged into the entity "Miller Automotive Group, Inc." On February 3, 2013, Needler filed an amended voluntary petition under the proper name of the debtor – Miller Automotive Group, Inc.

During the course of the Chapter 11 case, Needler received several orders from the clerk of the court to show cause for failure to comply with local filing

---

[1]The Honorable Dennis R. Dow, United States Bankruptcy Court for the Western District of Missouri.

requirements. Needler was unsuccessful in obtaining authority for the debtor to use cash collateral and to retain a broker to attempt to sell the business. He was also unsuccessful in his attempt to get the United States District Court for the Western District of Missouri to withdraw the reference of the bankruptcy case from the bankruptcy court. Relief from the automatic bankruptcy stay was sought and obtained by the two primary creditors, Ally Financial, Inc., and Chrysler Group, LLC. Ultimately, on April 24, 2013, the bankruptcy case was dismissed on the debtor's motion. The court closed the case file on May 29, 2013. During the pendency of the Chapter 11 case, Needler never sought nor obtained approval of any attorney fees and expenses.

Approximately six months later, the United States Trustee filed a motion to reopen the Chapter 11 proceeding to accord relief to the debtor and for cause pursuant to 11 U.S.C. § 350(b). Specifically, the United States Trustee asserted that she had received a written complaint from the debtor and debtor's principals concerning the conduct of Needler and his co-counsel[2] in the representation of the debtor. As part of the motion to reopen, the United States Trustee also asserted that Needler failed to communicate accurate information about the case to the debtor, that Needler made potentially false and misleading representations to the debtor and its officers concerning the case, and that Needler may have filed documents and taken actions in the bankruptcy case which were not authorized and resulted in unnecessary litigation and expense. The United States Trustee further noted that Needler had filed a state court action against the debtor and the debtor's principals for attorney fees in excess of $49,000.00. After consideration, the bankruptcy court granted the motion to reopen without a hearing. After the case was reopened, Needler attempted to object

---

[2]A settlement was eventually reached between the United States Trustee, the debtor, and Needler's co-counsel which effectively removed the co-counsel from these proceedings.

to the motion to reopen, which objection was denied as moot since the court had already granted the motion.

Thereafter, the United States Trustee filed a motion to compel Needler to disgorge all fees previously paid and to determine the reasonableness of any fees Needler asserted against the debtor. Subsequently, at a preliminary hearing on the United States Trustee's motion, Needler was ordered to file a final fee application. He did so, seeking more than $63,000.00 in fees and $3,600.00 in expenses. The United States Trustee objected to the fee application, as did David and Gloria Miller, the principals of the debtor. On May 13, 2014, the United States Trustee then filed the amended motion that is the subject of this appeal. In the amended motion, the United States Trustee requested the disgorgement of all fees paid to Needler, along with the imposition of additional sanctions "pursuant to [the] Court's inherent authority, 11 U.S.C. § 105(a) and Fed. R. Bankr. P. 9011." Sanctions were requested because:

> Mr. Needler committed numerous serious acts of misconduct which violated the Federal Rules of Bankruptcy Procedure and the local rules of practice before this Court, and Mr. Needler's conduct evidences a pattern of such misconduct in cases filed in this court as *pro hac vice* counsel to Chapter 11 debtors.

In addition to disgorgement, the amended motion requested a declaration that Needler is entitled to no compensation for services rendered in the Chapter 11 case, denial of permission to appear pro hac vice before the Western District of Missouri in the future, and directing the clerk of the court to revoke Needler's electronic filing access. Needler objected to the amended motion and the parties engaged in discovery.

On July 22, 2014, an evidentiary hearing was held in the bankruptcy court, which was more than eight months after the case was reopened for cause, five months after the initial motion to disgorge fees and deny compensation, and two months after the amended motion requesting disgorgement and additional sanctions. At each step

-4-

along the way, Needler was afforded the opportunity to file objections, responses and briefs, and to otherwise participate in the proceedings. After the July 22, 2014, evidentiary hearing, Needler was given the further opportunity to file a post-hearing brief with his closing argument.

On October 24, 2014, the bankruptcy court issued its detailed memorandum opinion regarding the matters before the court – Needler's final fee application and the amended motion for denial of compensation, disgorgement of fees and imposition of sanctions filed by the United States Trustee. The court denied Needler's fee application and granted the United States Trustee's motion for disgorgement and other sanctions. Needler then sought reconsideration, which was denied in a detailed order dated December 19, 2014. Needler then timely filed his notice of appeal.

### *STANDARD OF REVIEW*

A bankruptcy court's findings of fact are reviewed for clear error, and conclusions of law are reviewed de novo. *Briggs v. LaBarge (In re Phillips)*, 433 F.3d 1068, 1071 (8th Cir. 2006) (citation omitted). "A bankruptcy court's decision to impose sanctions is reviewed for an abuse of discretion." *Id.* (citing *Schwartz v. Kujawa (In re Kujawa)*, 270 F.3d 578, 581 (8th Cir. 2001); *Grunewaldt v. Mut. Life Ins. Co. of N.Y. (In re Coones Ranch, Inc.)*, 7 F.3d 740, 743 (8th Cir. 1993) ("We apply an abuse-of-discretion standard of review in all aspects of Rule 11 (and by analogy, Rule 9011) cases.") (citing *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990)). "When an appellate court reviews a district court's factual findings, the abuse-of-discretion and clearly erroneous standards are indistinguishable. A court of appeals would be justified in concluding that a district court had abused its discretion in making a factual finding only if the finding were clearly erroneous." *Hartmarx,* 496 U.S. at 401. A finding is clearly erroneous if, after examining the entire record, we are left with a definite and firm conviction that the bankruptcy court has made a mistake. *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985) (quoting

*United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)). Where there are two permissible views of the evidence, the fact finder's choice between them cannot be clearly erroneous. *Id.* at 574.

## *DISCUSSION*

Notice and opportunity to be heard must be afforded to the party to be sanctioned prior to the imposition of sanctions. *Walton v. LaBarge (In re Clark)*, 223 F.3d 859, 864 (8th Cir. 2000) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 56-57 (1991)); Fed. R. Bankr. P. 9011(c). "[N]otice must be given that the court is considering imposing sanctions." *Id*. at 864-65. The United States Trustee's motion to reopen, which was filed in November 2013, put Needler on notice as to most of the allegations against him. Thereafter, Needler filed objections and at least two preliminary hearings were held. In May 2014, a detailed amended motion for sanctions was filed clearly describing the sanctions being sought (those that were ultimately imposed) and the factual basis for seeking the sanctions. Needler filed an objection and an amended objection to that motion and appeared at the evidentiary hearing on July 22, 2014. At that hearing, he cross-examined witnesses, but apparently chose not to testify himself. We see no problem with the notice and opportunity to respond provided to Needler – and, importantly, Needler does not raise any.[3]

Federal Rule of Bankruptcy Procedure 8014(a)(5) requires the appellant's brief to contain a statement of the issues presented on appeal. Needler's brief identified eleven such issues. However, the first ten issues on appeal listed in Needler's brief are really the same issue. That is, did the bankruptcy court act fairly, reasonably, and without bias in denying any fees and granting the United States Trustee's motion for

---

[3]"Claims not raised in an opening brief are deemed waived." *Jenkins v. Winter*, 540 F.3d 742, 751 (8th Cir. 2008).

disgorgement of fees and for sanctions. The eleventh issue listed by Needler appears to question whether the bankruptcy court followed proper procedure in reopening the case under § 350(b) and whether it had jurisdiction to do so when the underlying case was dismissed prior to being fully administered.

### A. Was Proper Procedure Followed in Reopening the Bankruptcy Case?

Needler appears to challenge the bankruptcy court's "jurisdiction" to enter the appealed orders because, according to Needler, the bankruptcy case should not have been reopened. In support of this proposition, Needler asserts that proper procedure was not followed in connection with the motion to reopen, and that a closed case which was dismissed prior to being fully administered cannot be reopened.

Needler argues that "Section 350(b) of the Bankruptcy Code as to [Re]Opening requires Notice and Hearing which was denied to the Appellants here . . . ." As to this proposition, Needler is simply incorrect. Nothing in § 350, or in its implementing Rule 5010, requires "notice and hearing" prior to the motion being granted. *Bowman v. Casamatta (In re Bowman)*, 526 B.R. 802, 804-05 (B.A.P. 8th Cir. 2015) (stating "Debtors' principal complaint is the bankruptcy court did not hold a hearing before denying their motion to reopen their case. The bankruptcy court was under no obligation to do so . . . .") (quoting *Dworsky v. Canal Street Ltd. P'ship (In re Canal Street Ltd. P'ship )*, 269 B.R. 375, 380 (B.A.P. 8th Cir. 2001)).[4]

Needler further argues that Local Rule 1017-1(E) promulgated by the Bankruptcy Court for the Western District of Missouri specifically requires notice and hearing in connection with a motion to reopen a dismissed case. Needler is

---

[4]We note that Needler was also the attorney for the debtors in *Bowman* and had actual knowledge of its clear and unequivocal ruling. Remarkably, Needler was not deterred from again raising the identical issue in this appeal.

correct that motions falling under that local rule do require recipients to receive 21 days to object. However, Needler fails to recognize that the local rule applies only to a motion to reopen filed "by the debtor." There is no similar requirement in the local rules for a motion to reopen filed by a party other than the debtor. Here, the motion to reopen was filed by the United States Trustee. Similarly, Needler also points to Local Rule 9060-1(J), which allows the bankruptcy court to rule on certain motions sua sponte. He argues that a motion to reopen is not set forth in the list of exemplary motions set forth in the rule. However, the list of motions set forth in the rule are clearly examples, and are not exclusive. Needler's arguments regarding local rules and procedure in connection with a motion to reopen are without merit.

Needler also takes the position that the case should not have been reopened because the case was dismissed and not fully administered at the time it was closed. In support of this proposition, Needler latches onto the following paragraph from our recent decision in *Bowman*:

> In this case, the bankruptcy court held "section 350 should not be used to reopen a case that was dismissed for cause before it was fully administered." We agree: "[A] dismissed case cannot be reopened under § 350(b)[.]" *Finch v. Coop (In re Finch )*, 378 B.R. 241, 246 (B.A.P. 8th Cir. 2007) (citation therein), *aff'd*, 285 F. App'x 326 (8th Cir. 2008). For that reason alone, we cannot say the bankruptcy court's decision not to reopen Debtors' dismissed case was an abuse of discretion.

*Bowman,* 526 B.R. at 804 (footnote omitted).

Needler's reliance on *Bowman* and *Finch* is misplaced. Unlike the present case, both *Bowman* and *Finch* involved motions filed by debtors who were, effectively, seeking to set aside a dismissal for cause. As the *Finch* court adequately explained:

In essence, the Debtors assert that the case should be reopened to accord them relief (*i.e.*, allowing them to proceed with their Chapter 13 case, regain possession of the trucks, and obtain their discharge) and for other cause (*i.e.*, to remedy the alleged wrongs done to them by their creditors and award them damages for such wrongs).

The Debtors misunderstand the nature and effect of reopening a closed case.

Reopening is supposed to be little more than an administrative function which is designed to resurrect closed files from the court's archives so that some type of request for relief can be received and acted upon. This is usually done in order to take care of some detail that was overlooked or left unfinished at the time the case was closed. It was not designed as an opportunity to create, and then enforce, rights that did not exist at the time the case was originally closed.

Rather than wanting to take care of some overlooked or unfinished detail, what the Debtors really seek is to have the dismissal of their case set aside and their trucks returned to them.

However, a dismissed case cannot be reopened under § 350(b); rather a dismissal can be undone only through an appeal or a motion under Federal Rule of Bankruptcy Procedure 9023 or 9024.

*Finch*, 378 B.R. at 246 (footnotes and citations omitted).

Thus, contrary to Needler's assertion, *Bowman* and *Finch* do not stand for the proposition that a case which was dismissed for cause prior to being fully administered cannot ever be reopened under § 350(b). Needer also mixes in here a "jurisdiction" argument that is difficult to comprehend. He seems to believe that if a dismissal order doesn't expressly retain jurisdiction in the bankruptcy court, the case cannot ever be re-opened. Besides the fact that this argument again conflates

-9-

concepts of dismissal versus case closing–two very different things as discussed above--the proposition that a bankruptcy court must expressly retain jurisdiction when dismissing a case in order to reopen it at a later time simply isn't the law. Section 350 clearly provides statutory authority to reopen a closed case. Again, this assignment of error is without merit.

### B. Did the Bankruptcy Court Act Fairly, Reasonably, and Without Bias?

Needler's primary issue on appeal, stated ten different ways, is whether the bankruptcy court acted fairly, reasonably, and without bias in denying compensation, ordering disgorgement and imposing other sanctions. In order to prevail, Needler must show that in imposing sanctions, the bankruptcy court abused its discretion. *Briggs v. LaBarge (In re Phillips)*, 433 F.3d 1068, 1071 (8th Cir. 2006).

The bankruptcy court denied compensation, ordered disgorgement and imposed other sanctions pursuant to Federal Rule of Bankruptcy Procedure 9011, § 105 of the Bankruptcy Code, and the inherent authority of the bankruptcy court to discipline attorneys who appear before it.

> Pursuant to Federal Rule of Bankruptcy Procedure 9011(c)(1)(B), a bankruptcy court may impose sanctions on its own initiative. Fed. R. Bankr. P. 9011(c)(1)(B). In addition, Bankruptcy Code § 105(a) provides a bankruptcy court with authority to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code, and allows the court to "tak[e] action or mak[e] any determination necessary or appropriate to . . . prevent an abuse of process." 11 U.S.C. § 105(a). And, a bankruptcy court "may also possess 'inherent power . . . to sanction "abusive litigation practices." ' " *Law v. Siegel*, ___ U.S.___, ___, 134 S. Ct. 1188, 188 L. Ed. 2d 146, 2014 WL 813702, at *5 (2014) (citing *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 375-76 (2007)) (quotation marks omitted).

*Young v. Young (In re Young)*, 507 B.R. 286, 291-92 (B.A.P. 8th Cir. 2014).

Here, the bankruptcy court effectively issued two sanctions. First, the court denied Needler's application for fees and ordered disgorgement of all fees Needler collected as part of his retainer. Second, the court suspended Needler indefinitely from the privilege of practicing before the United States Bankruptcy Court for the Western District of Missouri and revoked his electronic filing privileges.

The bankruptcy court provided a detailed explanation of its decision to deny Needler's fee application and order disgorgement of his retainer. The court specifically found that "[t]he record indicates that Needler not only failed to provide a benefit, but took actions that were detrimental to the Debtor and the estate." It further found: "From the very beginning, Needler caused the Debtor to incur unnecessary legal fees." In support, the bankruptcy court noted the following:

– Needler filed the initial petition naming a debtor that did not legally exist. Then, he failed to take action to correct the debtor's name after the United States Trustee brought it to his attention, requiring the United States Trustee to file a motion to dismiss.

– He failed to obtain a final order authorizing the debtor to use cash collateral due to inadequate evidence to support the motion. One of the owners of the debtor testified that Needler never advised her as to what evidence was needed to obtain use of cash collateral and never reviewed her projections for feasibility or accuracy.

– Dissatisfied with the bankruptcy court's detailed instructions on how to obtain use of cash collateral, Needler filed a baseless motion with the United States District Court to withdraw the reference of the bankruptcy case. The motion was quickly denied by the district court as a classic case of forum shopping.

-11-

–       He failed to file a plan that could be considered by the court since the one he filed was not accompanied by a disclosure statement as required in Chapter 11.

–       There was no evidence that Needler made any attempt to secure floor plan financing for the debtor to continue in business.

–       Needler filed an application to employ a broker to sell the business, but failed to disclose in the application the significant business relationship between Needler and the broker. When the United States Trustee objected, Needler withdrew the motion and failed to file a new broker application.

–       Needler failed to adequately disclose the true source of his retainer and had been admonished by a bankruptcy court in another case for the same infraction.

–       The two largest secured creditors of the debtor sought relief from stay and the debtor's principals instructed Needler to file a motion to dismiss the case, explaining:

> Our rationale was because he [Needler] failed to obtain the objective to which he said that he was going to do. We felt we couldn't trust him. We saw how he operated and he was very unorganized. Just in my opinion, he was incompetent, completely incompetent. . . . We had no faith in that he even knew what he was doing.

–       Needler did not enter into a written fee agreement with the debtor and engaged in bad faith by seeking fees far in excess of the amount he quoted.

–       He should have recognized from the beginning that there was no reasonable likelihood of a successful reorganization for the debtor due to its operational struggles, low inventory, and inability to obtain financing.

–      The bankruptcy court concluded:

> In short, the Court finds that Needler not only failed to provide any actual value to the Debtor's estate, but that his services were not reasonably likely to do so. It is apparent that his only success was stringing along a case that should never have been filed in the first place.

The evidence overwhelmingly supports the bankruptcy court's findings and Needler has not raised anything on appeal that would convince us that the bankruptcy court abused its discretion by making clearly erroneous factual findings in denying compensation and ordering disgorgement. His primary argument is that the debtor had value on the date of filing–the dealership franchises, inventory and other assets. He asserts that he "protected" that value during the four and half months of the case. In essence, he is saying that by filing the case and obtaining the benefit of the automatic stay for a period of time, he provided some compensable benefit to his client.

It is true that the automatic stay was in force for a few months, although it is not entirely clear that the debtor needed it. In any event, Needler fails to identify any other value that the debtor received from his services. In light of the overwhelming evidence of Needler's actions, failure to act and infractions delineated by the bankruptcy court, the bankruptcy court's findings easily survive the abuse of discretion test. "A court may conclude that an attorney who should have known a reorganization was futile before filing the petition has rendered no service to the estate and should therefore not be compensated for such service." *In re Coones Ranch, Inc.,* 7 F.3d 740, 744 (8th Cir. 1993)(citing *In re King*, 96 B.R. 206, 208 (W.D.Mo.1989); *In re Lederman Enter., Inc.,* 997 F. 2d 1321, 1324 (10th Cir. 1993)).

In support of its decision to indefinitely suspend Needler from appearing pro hac vice in the Western District of Missouri and revocation of electronic filing privileges, the bankruptcy court remarked that the record in the case was "replete with

examples of Needler's violations of not only the Bankruptcy Code, Bankruptcy Rules, and Local Rules, but basic tenets of legal representation as well." Specifically, the bankruptcy court referenced:

– Needler failed to inform his client about the pleadings he filed and the responses thereto, including his application to employ the broker with which he had a pre-existing business relationship.

– His failure to obtain his client's input and authorization before filing motions and pleadings.

– His failure to perform reasonable investigation into the facts contained in the petition and made other filings without conducting due diligence.

– Needler failed to enter into a written fee agreement with his client and misled the client's principals as to the total amount they would have to pay.

– He intentionally obscured the true source of his retainer.

– He failed to comply with local rules pertaining to electronic filing, including the failure to obtain and retain original signatures of the debtor's representative on filings in the case.

– Needer's interactions with the debtor's representatives were found to be "deplorable" and he was described as acting like a "bully."

– The bankruptcy court's search of published opinions revealed numerous other cases (the court listed eight such cases) that "revealed a pattern of professional misconduct, procedural non-compliance, and ethical violations" by Needler.

The evidence again overwhelmingly supports the bankruptcy court's findings and the imposition of sanctions under Bankruptcy Rule 9011 and the inherent authority of the bankruptcy court. The bankruptcy court was not unfair, unreasonable, or biased as suggested by Needler. The bankruptcy court acted within its discretion in imposing the sanction of indefinite suspension from the practice of law and revocation of electronic filing privileges in the Western District of Missouri. Since Needler was a repeat offender, not only in the Western District of Missouri but in many other jurisdictions as well, the indefinite nature of his suspension was reasonably suited to the violations found by the bankruptcy court.

## *CONCLUSION*

For the foregoing reasons, we affirm.

_____